[Civ. No. 26596. Fourth Dist., Div. One. May 19, 1983.]

SEYMOUR LAZAR, Plaintiff and Appellant, v.
HERTZ CORPORATION, Defendant and Respondent.

COUNSEL

David J. Yardley, William S. Lerach, William S. Dato, Godfrey L. Duke, Jr., Milberg, Weiss, Bershad & Specthrie and Milberg, Weiss, Bershad, Specthrie & Lerach for Plaintiff and Appellant.

Jack W. Crumley, Lee R. Rydalch, Peter R. Thompson, Luce, Forward, Hamilton & Scripps, Jerome J. Shestack, Arthur H. Kahn, Deena Jo Schneider and Schnader, Harrison, Segal & Lewis for Defendant and Respondent.

OPINION

**BUTLER, J.**—Seymour Lazar rented a 1980 Pontiac from the Hertz Corporation in California at Ontario International Airport on March 21, 1980. He drove the car 78 miles to Palm Springs returning the car there to a Hertz facility the following day without filling up the gas tank. Hertz charged him $11.15 for gasoline. Based on EPA estimates, Lazar concluded he was charged at least $1.97 and as much as $2.95 per gallon which was at least 57 percent and perhaps 136 percent higher than the maximum price permitted under federal regulations. Lazar filed this class action against Hertz on behalf of himself and all persons in California who rented cars from Hertz during the four-year period ending November 1, 1980, and were charged by Hertz for gasoline upon return of rented automobiles with less than a full tank. The court declined to certify the lawsuit as a class action. Lazar appeals.

### THE STANDARD OF REVIEW

We now determine the scope and the standard of our review of the court's order refusing to certify the class.

"A decision by a trial court denying certification to an entire class is an appealable order. (*Daar* v. *Yellow Cab Co.* [1967] 67 Cal.2d [695,] at pp. 698-699 [63 Cal.Rptr. 724, 433 P.2d 732]; see also *Morrissey* v. *City and County of San Francisco* (1977) 75 Cal.App.3d 903, 907 [142 Cal.Rptr. 527].) (1) However, trial courts have been given great discretion with regard to class certification. (*Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.* (1974) 37 Cal.App.3d 193, 199-200 [112 Cal.Rptr. 144].) For example, in the absence of other error, this court will not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used (see *Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 361 [134 Cal.Rptr. 388, 556 P.2d 750]); or (2) erroneous legal assumptions were made (*Fletcher* v. *Security Pacific National Bank* (1979) 23 Cal.3d

442, 446 [153 Cal.Rptr. 28, 591 P.2d 51]).'' (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

In *Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d 355, the court considered whether the trial court abused its discretion in ruling that a group of homeowners in a planned development subdivision could maintain a class action against the developer for fraudulent misrepresentation.

"In reviewing the ruling of the trial court, we are guided by the principle that the showing required for certification of a class is within the trial court's discretion provided that correct criteria are employed. (*Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.* (1974) 37 Cal.App.3d 193, 199 [112 Cal.Rptr. 144].) Because defendant does not claim that the trial judge used improper criteria in denying its motion, the sole question is whether the trial court abused its discretion. We find no such abuse." (*Id.,* at p. 361.)

The court noted if the complaint had relied exclusively on alleged oral misrepresentations to each homeowner, the challenge to certification would be arguably meritorious. However, the court also considered written representations in identical final subdivision public reports provided each purchaser. The court did not limit itself to the allegation of the complaint. Other evidence was considered.

■ Reviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to determine if the class is ascertainable and has a well-defined community of interest. (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 478.)

Without objection, the trial court received and considered declarations of Lazar's counsel and of Hertz employees and a deposition of Lazar and a Hertz employee. The record on appeal includes transcripts of hearings before the trial court. With those materials before us, we review the evidence and inquire whether the trial court applied the correct criteria or made erroneous legal assumptions in refusing to certify the class.

Code of Civil Procedure section 382 authorizes class action suits when the question is one of common or general interest, of many persons and it is impracticable to bring them all before the court. ■ "The party seeking certification as a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members. (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 704.) The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses

typical of the class; and (3) class representatives who can adequately represent the class. (See Civ. Code, § 1781, subds. (b)(2)-(4).)" (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470.)

FACTUAL BACKGROUND

Hertz is in the business of renting automobiles through corporate facilities and licensed franchisees in California and elsewhere in the United States and abroad. Customers are required to sign a standard, preprinted form of rental agreement. During the class period (Nov. 1, 1976, through Nov. 1, 1980), the rental agreement forms included the following paragraph 6(b) on the reverse side: "REFUELING SERVICE CHARGES: if the rate does not include gasoline and Vehicle is returned with less gasoline than when rented, Customer shall pay an additional charge determined by Lessor for refueling service measured by: such difference if Customer has purchased gasoline during rental; or the number of miles traveled; or as otherwise determined by Lessor at its option."

Using a bank credit card on March 21, 1980, Lazar rented a 1980 Pontiac at the Hertz facility at Ontario International Airport. He signed the rental agreement which included applicable daily and mileage rates but did not include a rate for gasoline as noted on the face of the rental agreement.

| RATES DO NOT INCLUDE GASOLINE | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ BY MILES | | | | ☐ BY TANK | | | | | | |
| IN | E | 1/8 | 1/4 | 3/8 | 1/2 | 5/8 | 3/4 | 7/8 | F | REFUELING SERVICE | |
| | | | | | | | | | | | |
| OUT | E | 1/8 | 1/4 | 3/8 | 1/2 | 5/8 | 3/4 | 7/8 | F | | 11.15 |

Neither Hertz nor Lazar at any time marked either the boxes or the "in" or "out" bar graphs. Lazar drove to Palm Springs and returned the car the next day to the Hertz facility in Palm Springs having driven 78 miles. He did not put any gasoline into the tank. Hertz inserted $11.15 for refueling service in the appropriate box above. The record on appeal does not tell us when Lazar discovered the charge and what redress he sought other than filing this lawsuit eight months later.

The complaint alleges Hertz overcharged for gasoline and refueling services those California customers who return cars to Hertz without refilling the gas tank. These charges are said to be set without regard to the amount of gasoline actually used, the cost of labor involved in refueling, cost to Hertz of the gasoline used or the cost to Hertz of the refueling services.

The first cause of action alleges violation of federal regulations which fix the resale price of gasoline in that Hertz charged prices in excess of those fixed and seeks imposition of an involuntary trust on the profits so realized by Hertz for the benefit of the class. An injunction is sought to restrain Hertz and punitive damages are also claimed.

The second cause of action charges a breach of the duty of good faith and fair dealing in that Hertz' refueling charges are arbitrary, capricious and are established to increase Hertz' income at the expense of the class.

The third cause of action in fraud and deceit claims Hertz did not advise the class a substantial premium over the legal price would be charged for failing to refill the gas tank and did not inform customers the refueling charge bore no relation to the amount of the refill, labor involved, cost to Hertz of the fuel or cost of the refueling service. Further, Hertz falsely implies to its customers they will pay no more than the federal maximum for gasoline if they elect to have Hertz refill the tank.

The fourth cause of action charges violation of the Consumers Legal Remedies Act, Civil Code section 1750 et seq. Lazar concedes he is not a consumer. We later discuss his proposal to add a plaintiff-consumer.

During the class period, Hertz used two different methods of calculating refueling service charges at its corporate locations depending on whether the customer purchased gasoline during the rental.

When a customer returned the rented car without having put in any gasoline, the refueling service charge was determined by reference to a chart that took into account the prevailing retail price of gasoline in the area, the estimated miles per gallon of gasoline for the car based on average EPA estimated miles per gallon for a group of similar car models, and the number of miles driven (the "mileage" method).

When a customer put some gasoline in his car during the rental, his refueling service charge was determined by reference to a chart that took into account the prevailing retail price of gasoline in the area, the car's general tank size (actually the average of the manufacturer's specified tank sizes for a group of similar car models) and the amount of gas that the customer stated was in the tank when he returned the car (the "tank" method).

Both methods took into account the prevailing retail price of gasoline in the area of the Hertz location where the car was returned. That price differed from location to location and from time to time (sometimes as often as from week to week) at the same location.

Corporate facilities and franchise facilities are indistinguishable to the customer. Hertz does not control franchisee refueling charge computation or methodology.

During the class period, different mileage and tank charts were used. In March of 1980, in California, the prevailing retail price of gasoline in the area of Hertz corporate locations ranged from $1.18 to $1.36 and 16 different charts were used. On any given day a number of different charts were used at different locations and a number of different charts were used at each location during the month as the result of changes in the prevailing retail price of gasoline in the area.

In October of 1980, the Department of Energy (DOE) signed a consent order with Hertz concerning the refueling service charges charged by Hertz through June of 1980. DOE had alleged these charges were in excess of maximum selling prices for gasoline as fixed by DOE. Without admitting liability, Hertz agreed to compute the refueling service charges with reference to the fixed prices and to refund $800,000 to its customers. The refund was to be accomplished by a rollback of two cents per gallon of gasoline until $849,918 (includes interest) had been refunded to Hertz customers returning cars with unfilled tanks after November 1, 1980. DOE's pricing regulations were lifted in 1981, some $174,200 having been refunded by way of the rollback. Hertz deposited the balance of the claimed overcharge and interest of $694,919 with DOE. No claims have been made against that fund by any Hertz customer.

### ASCERTAINABLE CLASS

The complaint sets out allegations as to the class:

"5. Plaintiff brings this action on his own behalf and on behalf of all persons similarly situated. The class which plaintiff seeks to represent is composed of all persons in the State of California who rented automobiles from Hertz during the period commencing November 1, 1976, and ending November 1, 1980 (the 'class period') and who were charged a refueling service charge for returning their rented automobiles without having refilled the fuel tank (the 'class').

"6. The class is composed of thousands of persons, the joinder of whom is impractical, and the disposition of their claims in a class action is of benefit to the parties and the class." ■ We first inquire whether Lazar has established the existence of an ascertainable class. This determination does not proceed in the abstract. "Applicable precedents indicate that in observing the ascertainable class requirement they are at the same time giving recognition to the principle that a group of individuals' rights to recover, each of which is based on a separate set of facts, cannot be determined by a judgment in a class action. To

put it in another way, although a judgment in a class action is res judicata as to claims of members of the class represented therein [citations omitted], res judicata will not preclude subsequent actions by those whose rights to recover are based upon different facts. Therefore, such individuals cannot properly be brought under the umbrella of a class action. . . .

" . . . . . . . . . . . . . . . . . . . . . .

"Thus, whether there is an ascertainable class depends in turn upon the community of interest among the class members in the questions of law and fact involved. If we conclude that the instant complaint properly sets forth a class action, the judgment herein will be res judicata as to all persons to whom the common questions of law and fact pertain. We therefore proceed to examine the complaint in order to determine whether it sets forth a sufficient community of interest." (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, at pp. 704-705, 706 [63 Cal.Rptr. 724, 433 P.2d 732].)

During the class period, some 5 million customers rented Hertz cars, at corporate or franchise locations, and signed the rental agreements. Clearly, the parties are sufficiently numerous such that it is impracticable to bring them all before the court. While identity is not now relevant (*Daar* points out there is no need to identify individual members if an ascertainable class can be shown), we note Hertz maintains tissue copies of the preprinted rental agreements as well as computer records bearing upon identity of customers. A fair reading of the complaint's class allegations define the class as persons who rented automobiles from Hertz in California during the class period and returned them without refilling the tank and consequently suffered the refueling charge. Whether the car was returned outside California does not derogate from the plain wording of the class allegation. The refueling charge wherever the tank is refilled (at least at a corporate facility) would be computed according to the rental agreement and resultant damage, if any, would be identical. Lazar concedes the class does not include persons who rented cars from Hertz outside of California and returned them in California.

Hertz argues and the court commented on definitional difficulties in ascertaining the class because of the return of unfueled automobiles to franchisees. While Hertz claims not to control franchisee refueling practices, we infer from the record franchisees follow Hertz practice. So far as class ascertainment is concerned, we conclude possible disparities between corporate and franchisee refueling practices are not now controlling. If certified as a class action, the trial court has inherent power as discovery proceeds to limit the class to those who returned their rented cars to one of the 150 corporate outlets in California. We conclude the class is sufficiently described.

## COMMUNITY OF INTEREST

We next ascertain whether there are issues of law and fact common to the class as a whole.

The claimed common questions of law and fact uniting the class in all four causes of action are whether Hertz' policy and practice of concealment, nondisclosure and misrepresentations of the basis for refueling charges resulted in damage to Hertz' customers in violation of California law.

The first cause of action seeks a constructive trust for the benefit of the class of the monies derived by Hertz from alleged overcharging. ■ "A constructive trust is an equitable remedy imposed where the defendant holds title or some interest in certain property which it is inequitable for him to enjoy as against the plaintiff. Section 2224 of the Civil Code provides that: 'One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.' In order to create a constructive or involuntary trust as defined in section 2224, no conditions other than the three stated in that section are necessary: the existence of a res (property or some interest in property), the plaintiff's right to that res, and the defendant's gain of the res by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act [citations]." (*Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 373 [140 Cal.Rptr. 744].) The constructive trust requires, then, establishment of the fraud pleaded in the third cause of action or the breach of covenant of good faith and fair dealing set out in the second cause of action. We go to the third cause of action.

## FRAUD

To prevail, the class must show Hertz did not advise the members:

1. Failure to refill the gas tank would result in a substantial premium over the maximum legal price of gasoline; or

2. The refueling service charge bore no relationship to gas actually used, labor costs of the service, cost to Hertz of gasoline or cost to Hertz of the refueling service. They then must demonstrate Hertz' failure to disclose any of those elements was purposeful and was intended to deceive them and Hertz' implied representations the refueling charge would not exceed the federally mandated price were false and fraudulent.

Briefly, as is pleaded in the complaint, the class must demonstrate actual fraud, constructive fraud and deceit. (Civ. Code, §§ 1572, 1573, 1709 and 1710.) The trial court remarked on significant differences among the class members with respect to their knowledge of refueling service charges, recovery as to each member would depend on an understanding of the refueling charge procedure, and Hertz' right to demonstrate lack of reliance on representations as to 5 million class members would be "an unconscionable burden upon everyone." The court concluded individual issues as to knowledge of the refueling procedures, reliance on representations, refilling of tanks during the rental period and variations in applicable statute of limitations outnumbered common issues; indeed, the court did not find any common issues. *Richmond, supra,* 29 Cal.3d 462, admonishes we cannot disturb a trial court's ruling on class certification which is supported by substantial evidence unless the court used improper criteria or made erroneous legal assumptions.

■ Apart from Lazar's testimony at his deposition which supports his contention, we find no evidence refuting the fraud allegations of the complaint. The record readily lends itself to inferences, speculations and observations as to potential problems in discovery, trial, individual damages of class members, difficulties in computation of individual overcharges, complexities of the refueling charge procedures, variances in prevailing gasoline prices as to times and places and reliance by individual members on the alleged Hertz' representations. Such problems so speculated upon are not fatal to class certification. (*Rosack* v. *Volvo of America Corp.* (1982) 131 Cal.App.3d 741, 762.) We conclude the court's conclusion individual issues predominate is not supported by substantial evidence.

Moreover, the court failed to apply proper criteria and made erroneous legal assumptions. The court based its denial of class certification, in part, on the predominance of individual issues. Specifically, the court concluded proof of the essential element of reliance would differ as to each class member.

*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, involved a consumer fraud action in which the defendant claimed the question whether each class member actually relied on the alleged misrepresentation was an individual issue. The court held individual proof of reliance was not required. Where material misrepresentations are made to class members, an inference of reliance arises as to the entire class. Where purchases were made consistent with reliance upon written documents containing misrepresentations, an inference may be made establishing justifiable reliance on a common basis. (*Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d at p. 363.)

Hertz argues the defendant in a fraud action retains the right to rebut the inference of reliance; so to do with respect to the 5 million class members creates an unconscionable burden.

The argument goes to the manageability of the action, a problem frequently raised in class action suits and rejected by California courts. (Deposition of unnamed plaintiffs, *Southern California Edison Co.* v. *Superior Court* (1972) 7 Cal.3d 832 [103 Cal.Rptr. 709, 500 P.2d 621]; costs of notice to class members, *Civil Service Employees Ins. Co.* v. *Superior Court* (1978) 22 Cal.3d 362 [149 Cal.Rptr. 360, 584 P.2d 497]; costs of notice to 700,000 class members, *Cartt* v. *Superior Court* (1975) 50 Cal.App.3d 960 [124 Cal.Rptr. 376].) Hertz made no showing of the existence of rebuttal evidence. Evidence that substantial customers (Columbia Broadcasting System, American Can Company and others) advised employees to refill tanks because of the refueling charge does not suggest nonreliance. Instead, such customers are probably excluded from the class. We think the hypothetical possibilities of disproval of reliance is not enough to defeat class certification.

### GOOD FAITH AND FAIR DEALING

■ In reviewing the second cause of action (breach of the covenant of good faith and fair dealing), the court erroneously assumed reliance of the class members was an element of that claim. The essence of the good faith covenant is objectively reasonable conduct. Under California law, an open term in a contract must be filled in by the party having discretion within the standard of good faith and fair dealing. (*Cal. Lettuce Growers* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496]; *Automatic Vending Co.* v. *Wisdom* (1960) 182 Cal.App.2d 354, 358 [6 Cal.Rptr. 31]; Cal. U. Com. Code, § 2305, subd. (2); Civ. Code, §§ 1655, 1656.) The rental agreement does not inform the customer how the refueling charge was computed. The complaint alleges Hertz failed to fix the charge in good faith at a reasonable level. Reliance by the customer on Hertz' good faith is not an element because inducement is not the issue.

We do not find substantial evidence to support the court's findings of predominance of individual issues and observe the court applied incorrect criteria and erroneous assumptions of law.

We conclude *Richmond*'s first prong of the community of interest, predominant common questions of law or fact, have been met by Lazar. We inquire as to the second, is Lazar representative of the class with claims or defenses typical of the class.

### REPRESENTATIVE OF THE CLASS

Lazar, a nonpracticing attorney, is a self-employed investor principally in the oil and gas field. He is a sophisticated, successful businessman who travels extensively looking after his interests. He frequently rents cars for business pur-

poses from Hertz and others. The court in denying certification suggested Lazar was not representative of the entire class "and, as a matter of fact, with the various factors in his case, he may be representative of but a small percentage." The court did not enumerate the factors or further expound upon Lazar's nonrepresentative status. Lazar's deposition recites his outrage at the alleged overcharge, his personal belief people should be fairly dealt with, and his determination to right perceived wrongs even at substantial cost to himself.

Hertz argues Lazar's knowledge of Hertz' refueling practice and rental car experience would be key considerations in determining his right to recover on the breach of the implied covenant of good faith and fair dealing. His practice of returning cars with unfilled tanks would be significant as to reliance.

■ Lazar has claims typical of the class as to the first three causes of action. He signed the rental agreement, returned an unfilled car and paid a refueling charge. He is not antagonistic to the interests of the other class members. Hertz does not contend his lawyers are not qualified to conduct the litigation. (*McGhee* v. *Bank of America* (1976) 60 Cal.App.3d 442 [131 Cal.Rptr. 482].) Hertz' arguments address the merits of Lazar's claims, not Lazar's status as a class representative. Finally, the trial court retains jurisdiction to determine at any time that Lazar is no longer fit to represent the class. (*Mallick* v. *Superior Court* (1979) 89 Cal.App.3d 434, 437 [152 Cal.Rptr. 503].) We conclude Lazar is presently representative of the class as to the first three causes of action.

As to the fourth cause of action, Lazar concedes he did not rent his car as a "consumer" as that term is defined in Civil Code section 1761, subdivision (d), under the Consumer Legal Remedies Act. He is therefore not a member of the consumer class and may not maintain the class action. (*La Sala* v. *American Sav. & Loan Assn.*, *supra*, 5 Cal.3d at p. 875.) He argues an exception should be made because issues in the first three causes of action will necessarily establish the rights of consumer members to recovery under the fourth. While this may be true, we adopt his suggestion the fourth cause of action should be certified to enable one or more "consumer" plaintiffs to intervene. The purpose of the act is to protect consumers and is to be liberally construed. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 823.) The trial court has the discretion to permit intervention in the interests of judicial economy and to preserve the rights of absent class members. (*Richmond* v. *Dart Industries, supra,* 29 Cal.3d at pp. 473-474; *Mallick* v. *Superior Court, supra,* 89 Cal.App.3d at p. 437.)

### THE CLASS ACTION—SUPERIORITY

■ The trial court concluded certification of the class was not appropriate for reasons other than those noted elsewhere in our opinion. First, the ad-

ministrative costs of a class action here are not justified because of the potential for very small individual recoveries. Second, a superior alternative is available through claims against the fund deposited by Hertz with DOE.

Federal Rules of Civil Procedure, rule 23(b)(3) (28 U.S.C.), specifies certification is appropriate if a class action is superior to other available remedies of resolving the controversy. California courts have referred to the rules in considering class action criteria. (*Richmond* v. *Dart Industries, supra,* 29 Cal.3d at p. 470; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 821; *Cartt* v. *Superior Court, supra,* 50 Cal.App.3d at p. 966.)

*Blue Chip Stamps* v. *Superior Court,* (1976) 18 Cal.3d 381, 385-386, speaks of the class action: "The class action has been held appropriate when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer. (*Collins* v. *Rocha,* (1972) 7 Cal.3d 232, 237 et seq. [102 Cal.Rptr. 1, 497 P.2d 225]; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 807; *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, 715.) A factor in determining feasibility of the group approach is the probability each member will come forward ultimately, identify himself and prove his separate claim to a portion of the total recovery. (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, 706, 713.) [¶] However, when potential recovery to the individual is small and when substantial time and expense would be consumed in distribution, the purported class member is unlikely to receive any appreciable benefit. The damage action being unmanageable and without substantial benefit to class members, it must then be dismissed."

The record does not disclose the administrative costs of these proceedings or whether members of the class will come forward. Hertz estimates the refueling charge to average $6. The recoverable overcharge, if any, is obviously less. The court noted the cost of mailing notice to class members. We can only speculate as did the trial court on the management of the case, knowing it in any event to be a difficult legal and administrative task. *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at pages 714-715, points up the benefits to the courts and the public where monetarily insignificant claims can be aggregated into a single lawsuit saving time, reducing waste and limiting duplication of effort. *Vasquez* v. *Superior Court, supra,* 4 Cal.3d at page 816, is to the same effect as are other recent California cases. We believe the benefits here outweigh, at this point, the burdens.

Claims against the DOE fund are suggested by Hertz as alternatives to this class action. The fund was initiated for all claimants and is not restricted to Californians. Lazar computes the alleged California overcharges during the class period at $4.5 million, compared to the funds on deposit with DOE of

$694,919. Other than publication in the Federal Register, there was no advisement of the fund deposit. As an arguable result, no claims have been made. We are cited to no authority requiring class action deference to the fund and we have found none. It is apparent the fund is not a substitute for a California class action seeking recovery of Hertz' overcharges, injunctive relief and punitive damages. The federal statutes authorizing DOE to fix gasoline prices and seek redress from violators did not act to repeal or amend California class action law.

## FUTURE PROCEEDINGS

The trial court retains jurisdiction throughout the proceedings concerning class certification. "Our decisions clearly contemplate the possibility of successive motions concerning certification. In *Vasquez,* we recognized that the courts should retain flexibility in the trial of a class action, for 'even after an initial determination of the propriety of such an action the trial court may discover subsequently that it is not appropriate.' *Vasquez* authorized the courts to utilize the procedures in rule 23 of the Federal Rules of Civil Procedure, and observed that a certification order issued under rule 23 'may be conditional and may be altered or amended before a decision on the merits.' (*Vasquez* v. *Supreme* [*sic*] *Court, supra,* 4 Cal.3d 800, 821.)" (*Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d at p. 360.)

## DISPOSITION

The trial court is directed to vacate its order refusing certification of the class and to enter an order granting class certification. The court is instructed to permit motions for intervention by plaintiff-consumers as to the fourth cause of action.

Brown (Gerald), P. J., and Work, J., concurred.

A petition for a rehearing was denied June 7, 1983, and respondent's petition for a hearing by the Supreme Court was denied September 8, 1983.