[No. G009030. Fourth Dist., Div. Three. Nov. 5, 1991.]

NATIONAL SOLAR EQUIPMENT OWNERS' ASSOCIATION, INC.,
Plaintiff and Appellant, v.
GRUMMAN CORPORATION et al., Defendants and Respondents.

1274

**COUNSEL**

Weinfeld & Mixon, David A. Weinfeld, Rutan & Tucker, Ira G. Rivin, Mark Smith Flynn and Matthew K. Ross for Plaintiff and Appellant.

Bruck & Perry, Paul C. Nyquist, Michael W. Kinney, Buchalter, Nemer, Fields & Younger, Leonard D. Venger, LouCinda Laughlin, James R. Rosen, Tuttle & Taylor, Douglas W. Beck, Susan M. Walker and Nicolas H. Miller for Defendants and Respondents.

**OPINION**

**SILLS, P. J.**—Plaintiff National Solar Equipment Owners' Association, Inc. (the Association), as a representative of its individual members, appeals from the trial court's order denying class certification. ■ Such an order is appealable. (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].) We find the trial court erroneously relied on certain criteria in reaching its conclusion, and therefore reverse.

FACTS

The parties before us cannot even agree on what the plaintiff is. The Association asserts it is a nonprofit corporation "formed for the express purpose of protecting and pursuing the rights of its members against the numerous defendants in this action." Defendants characterize the Association as something far more sinister, asserting it was formed by five financial planners who, "fearing their own liability . . . , founded the [Association] so as to maintain control over the direction of almost certain lawsuits." The

above disagreement is but one example proving that, although this is not a criminal case, it hardly has been a civil one either.

The Association filed suit in March 1985 "in a representative capacity on behalf of its members." The Association consists of approximately 2,070 members. According to the operative complaint, respondents Grumman Corporation, Grumman Allied Industries, Inc., and Grumman Energy Systems, Inc. (collectively Grumman) manufactured solar heating equipment in the early 1980's. This equipment was later sold to the Association's members as part of an investment program initially developed by other defendants. According to the Association, "Grumman also took part in the offer for sale and sale of plaintiff's members' investments and had a substantial pecuniary interest in the success of the solar investment program." The other respondent in this appeal, Greg Mortensen, is an Orange County attorney who allegedly acted as legal counsel in the sale and promotion of the investment program.

According to the operative complaint, the investment program was apparently the brainchild of three defendants, Paul Mills, Randolph Shipley, and Roger Bergeson. All three filed for bankruptcy and evidently were never served in this action. They used Mills's company, defendant Southwest Solar Products, Inc. (Southwest), as a conduit to purchase and sell the solar equipment. Southwest purchased all of the solar equipment used in the investment program from defendant Sun West Distributors, Inc. (Sun West), a Grumman distributor. According to the Association, Grumman provided promotional materials and sales assistance to its distributors (such as Sun West) and its dealers, including a "sales pitch book."[1] Grumman also purportedly engaged in direct consumer advertising. The Association alleged that Grumman knew other defendants would use its "good name" and sales materials to induce Association members into investing in the solar equipment program. A high percentage of Grumman's solar equipment sales allegedly resulted from the investment program.

The investment package was designed to take advantage of the ongoing energy crisis and recent changes in federal and state income tax laws. Each investor typically made a large down payment and executed a promissory note for the balance of the purchase price of the solar equipment. Shipley's

---

[1] Allegedly among these promotional materials was an opinion letter, written by respondent Mortensen on May 5, 1982, stating that tax deductions and credits for the solar equipment were appropriate as long as the equipment was in existence and ready for installation. Mortensen later supplemented this opinion letter on November 29 and December 21, 1982. The Internal Revenue Service later apparently ruled that the equipment was required to be installed before a tax deduction could be claimed.

company, defendant Solar Energy Leasing Company, was to arrange to have the equipment leased to third party users. According to the Association, however, Grumman preassigned serial numbers to some of the solar equipment before it was manufactured, and Grumman knew other defendants were representing that this equipment had already been made. This equipment never in fact was manufactured or leased, and some investors improperly (and unwittingly) claimed tax credits and deductions for equipment that never existed. This led to an investigation by the Internal Revenue Service, which disallowed claimed tax credits and imposed penalties upon the Association's members. The Association claimed these penalties as damages on behalf of its members, along with each member's down payment, and sought rescission of the promissory notes.

After about four years of demurrers and discovery, Grumman moved for summary judgment. Among its contentions was that the Association lacked standing to pursue the action in a representative capacity. The trial court treated the motion as a motion for judgment on the pleadings, and dismissed the Association's complaint with leave to amend. According to the trial court, the Association was "not entitled to recover for any damages other than the Association's own damages . . . ." The Association then petitioned this court for a writ of mandate. In a brief order, we denied the petition because we felt "the injuries [the Association] foresees are largely speculative." However, we also stated that "[t]he trial court's order appears wrong." (*National Solar Equipment Owners' Association* v. *Superior Court* (Aug. 14, 1989) G008491 [nonpub. opn.].) The trial court, on its own motion, then vacated its prior ruling and denied the motion for summary judgment. It also determined the matter was a class action and should proceed on that basis.

On November 20, 1989, the Association moved to certify a plaintiff class. The Association listed a number of questions of law or fact which it claimed were common to the action. Among these questions were whether Grumman had a duty to investigate the economic viability of the investment program, whether Grumman was aware of the "material deficiencies in the program which it failed to disclose," and whether Grumman improperly preassigned serial numbers to the solar equipment before it was manufactured. The Association also asserted common questions existed as to Mortensen, including whether his tax opinion was erroneous and, assuming it was in error, whether the promoters would have been able to sell the investment program without it.

Defendants'[2] opposition centered around two major themes. First, they claimed the Association was an inadequate class representative because it was operated and controlled by financial planners who were responsible for promoting and marketing the solar equipment investment program to Association members. Second, they asserted individual questions predominated because promotional materials changed throughout the life of the investment program, and reliance on these materials was always a question requiring individual proof.

At the hearing, the trial court initially stated that "[t]he questions of law are common." The focus of the argument then shifted to discovery. One of defendant's counsel complained that the Association's attorneys were resisting efforts to have all 2,000 members of the Association deposed. The trial court stated this was "a very valid objection." The court then stated: "I could grant the motion [to certify], for example, on some conditions. . . . The further condition that the plaintiffs stipulate that defendants have full discovery rights against all members of the class concerning the nature and sources of the representations, and then, based on that discovery, if it in fact discloses what now basically is your position, [defendants] would have a right to make a motion to decertify the class. [¶] That is one possible approach. But I am not inclined to put you in a procedural box where you are precluded from having this discovery." The following colloquy then ensued:

"Mr. Rivin [Association's counsel]: If it is an appropriate class action, and we think this is, they shouldn't need to take depositions of every member of the Association."

"The Court: Since it appears to bear on the issue of whether the representations were uniform, I think then you have not made an adequate showing to permit me to assign this as a class action . . . because I think it is something they should be permitted to test."

The trial court then denied the motion to certify the class. Relying on *Osborne* v. *Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 661 [243 Cal.Rptr. 815], the court ruled the Association had "failed to show the representations were made uniformly to all members of the class and that the

---

[2]In addition to Grumman and Mortensen, two other defendants remained at this stage: the Federal Savings and Loan Insurance Corporation (FSLIC), a holder in due course of thousands of promissory notes executed by Association members, and Henry W. Abts, an officer of defendant F.P.C.I, Inc., an organization which offered the solar investment leasing program for sale to Association members. These defendants settled before argument of this appeal.

same representations were made." The court also stated it was "not satisfied that the plaintiff is an appropriate representative of the class." This appeal followed.

DISCUSSION

I

The Association claims the trial court erred in ruling that this lawsuit should proceed as a class action. It relies on cases where homeowner's associations have sued in a representative capacity on behalf of the individual owners. If the Association is correct, of course, it should never have been required to seek certification of the class. Respondents, on the other hand, argue that the trial court never should have allowed the Association to sue in the first place. They claim the Association has no standing to sue because that entity has not suffered any damages of its own.

The Association relies primarily on the factually similar case of *Salton City etc. Owners Assn.* v. *M. Penn Phillips Co.* (1977) 75 Cal.App.3d 184 [141 Cal.Rptr. 895]. That opinion, however, supports the propriety of both aspects of the trial court's ruling here. In *Salton City* a property owners association brought suit in a representative capacity on behalf of its 2,190 members for rescission and restitution of land sale contracts. Defendant in *Salton City* made the same argument advanced by respondents in the present appeal, asserting the owners association had no standing because it had not been injured. The *Salton City* court conceded that a United States Supreme Court opinion, *Warth* v. *Seldin* (1975) 422 U.S. 490 [45 L.Ed.2d 343, 95 S.Ct. 2197], "essentially endorsed respondent's position." (*Salton City, supra,* 75 Cal.App.3d at p. 188.) The court distinguished *Warth,* however, in a manner which is equally applicable to the present appeal: "In the instant case the complaint alleges that the entire membership of the Association were victims of a systematic fraud. Only the extent of injury to each member would require individualized proof, a fact insufficient in itself to bar *class treatment* of the action. [Citation.] Notwithstanding the Association's disclaimer of interest in class action status, we look to the essential nature of the within action and find it to be a class action on behalf of a self-defined class." (*Ibid.,* italics in original.)

The rule of *Salton City* is simple: An association which has not itself been injured has standing to sue on behalf of its members only if it acts as a class representative. This seems a logical accommodation between two competing interests. The first is that courts should fashion some collective remedy where individual losses may not be great enough to warrant separate actions.

(See Code Civ. Proc., § 382.) The second is the basic notion that a party must be aggrieved in order to sue. (See Code Civ. Proc., § 367; see also *Warth* v. *Seldin, supra,* 422 U.S. at p. 508 [45 L.Ed.2d at p. 360].) The Association therefore has standing to sue, but must do so as a class representative.

## II

■ It has been said that trial courts are given great discretion with regard to class certification. (*Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.* (1974) 37 Cal.App.3d 193, 199-200 [112 Cal.Rptr. 144].) However, case law has established that reviewing courts give deference only where the trial court has successfully negotiated the proper "procedural hoops." In *Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d 462, our Supreme Court stated that an order denying class certification will be affirmed if supported by substantial evidence *unless* (1) improper criteria were used or (2) erroneous legal assumptions were made. (*Id.* at p. 470.) In interpreting *Richmond,* the court in *Clothesrigger, Inc.* v. *GTE Corp.* (1987) 191 Cal.App.3d 605 [236 Cal.Rptr. 605] held that an appellate court is required to reverse an order denying class certification where the trial court engaged in incorrect legal analysis, "even though there may be substantial evidence to support the court's order." (*Id.* at p. 612.)

This case thus presents an exception to the general rule on review that we look only to the trial court's result, not its rationale. Accordingly, we will analyze the two reasons given by the trial court in denying class certification: (1) The Association failed to show that "representations were made uniformly to all members of the class"; and (2) The Association is not "an appropriate representative of the class."

## A

■ The transcript of the hearing on the class certification motion leaves little doubt as to why the trial court felt the Association failed to show uniformity of the representations. This "failure" resulted because the Association refused to concede that all of its 2,070 members (i.e., the unnamed class members) were subject to full discovery by defendants, including the possibility of deposing every member. The trial court seemed ready to certify the class if the Association's counsel would make such a concession; when it was not forthcoming, the motion was denied. This was error.

In *Southern California Edison Co.* v. *Superior Court* (1972) 7 Cal.3d 832 [500 P.2d 621], our Supreme Court definitively ruled that unnamed class

members are "parties" for purposes of discovery. (*Id.* at p. 840.) However, the court also ruled that the right to such discovery is not absolute, stating the trial court did not abuse its discretion in requiring Edison to subpoena unnamed plaintiffs in order to take their depositions. The court observed that "named plaintiffs may be able to assert little, if any, control" over unnamed class members, and that defendants should not be allowed to "effectively stifle a class action at the discovery stage, either by imposing impossibly expensive burdens on the named plaintiffs or by chipping away at the size of the class through exclusion of the unnamed plaintiffs. It is especially vital to prevent such 'chilling' of class actions in light of their new importance as a litigation tool, . . ." (*Id.* at p. 842.)

The same underlying case that gave rise to *Southern California Edison* also begat *Carlson* v. *Superior Court* (1973) 33 Cal.App.3d 640 [109 Cal.Rptr. 240]. In that proceeding Edison sought to enforce its subpoenas by including a cover letter (signed by the trial judge) which essentially required unnamed plaintiffs to submit to a deposition or opt out of the class. (*Id.* at p. 649.) The Court of Appeal issued a writ of mandate vacating the trial court's order approving of such a procedure; it found "the either/or nature of the notice" objectionable. (*Id.* at p. 651.) It is clear from *Carlson* and *Southern California Edison* that defendants do not have an unfettered right to depose every unnamed class member.

It is equally clear that defendants do not have an unrestricted right to propound interrogatories to every unnamed class member. In *Danzig* v. *Superior Court* (1978) 87 Cal.App.3d 604 [151 Cal.Rptr. 185], the court recognized that California law was "silent as to whether each member of a plaintiff class can be required to answer interrogatories propounded by the defendant." (*Id.* at p. 608, italics omitted.) The court therefore surveyed the relevant federal case law, and concluded that unnamed class members do not "stand on the same footing as named parties to whom interrogatories have been propounded. None of the federal cases which hold that unnamed class members are 'parties' for purposes of being served with interrogatories, holds that such discovery may be had 'as a matter of course,' or that its scope may be as broad as the scope of discovery ordinarily is." (*Id.* at p. 612.)[3]

---

[3]The *Danzig* court elaborated as follows: "The reason for such restrictions on discovery of absent class members is that, to the extent the absent class members are compelled to participate in the trial of the lawsuit, the effectiveness of the class action device is destroyed. (*Bisgeier* v. *Fotomat Corporation* [(N.D.Ill. 1973)] 62 F.R.D. 118.) The purpose of the device is not only to relieve the courts of the burdens of repetitive litigation and multiple named plaintiffs; it is also to relieve the absent members of the burden of participating in the action. (*Bisgeier, supra.*) Where, for example, each class member's individual claim is small, the absent class members might not consider it to be worth their while to answer detailed

The foregoing cases serve to demonstrate what we believe is fairly obvious: If adverse parties were allowed full discovery of every unnamed class member, there would probably be no class actions. Courts have recognized this, and have modified traditional notions concerning the scope of discovery accordingly, particularly where (as here) reliance is a key issue. For example, in *Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355 [134 Cal.Rptr. 388, 556 P.2d 750], our Supreme Court held that an inference of reliance arises in a class action setting if a material false representation is made to persons whose subsequent acts were consistent with reliance on the representation. (*Id.* at p. 363, citing *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) Therefore, justifiable reliance may be established on a common basis without taking evidence from each individual class member. (*Danzig* v. *Superior Court, supra,* 87 Cal.App.3d at p. 613.)

It has also been held that, where a defendant allegedly makes material omissions, plaintiffs need not show reliance. In *Affiliated Ute Citizens* v. *United States* (1972) 406 U.S. 128 [31 L.Ed.2d 741, 92 S.Ct. 1456], an action brought under section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78a et seq.), plaintiffs alleged fraud in the purchase of securities because defendant bank concealed the higher price which the securities could command in a secondary market. The Tenth Circuit held that plaintiffs were required to prove reliance on the alleged omissions, but the high court reversed, stating: "Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. [Citations.] This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact." (406 U.S. at pp. 153-154 [31 L.Ed.2d at p. 761].)[4]

---

interrogatories, a task which may require the assistance of counsel. In such a case, interrogatories could be used effectively by defendants to decrease the size of a plaintiff class. In any class action, unnecessary interrogatories might be used effectively to delay the action, or to harrass [*sic*] the absent members of the plaintiff class." (*Danzig, supra,* 87 Cal.App.3d at p. 612.)

[4]While the opinion in *Affiliated Ute Citizens* did not elaborate on the reason for the rule it announced, one court explained the rationale as follows: "[I]t is virtually impossible to prove reliance in cases alleging nondisclosure of material facts. The inquiry that would normally be made in a case of affirmative misrepresentation—did the plaintiff believe the defendant's representation, and did that belief cause the plaintiff to act—does not apply in a case of nondisclosure. [Citation.] Since there is no affirmative representation in a nondisclosure case, a plaintiff who was required to prove reliance would have to show that he believed the opposite of the omitted fact, and this would be practically impossible to prove. [Citations.] [¶] . . . According to many federal courts, the rule [enunciated in *Affiliated Ute Citizens*] does not mean that proof of omission of a material fact conclusively resolves the causation question,

In light of the somewhat relaxed rules concerning reliance in class action settings, it is clear that depositions of every class member will hardly be necessary. While we share the trial judge's concern that defendants not be foreclosed from conducting relevant discovery, mandating depositions of every class member is simply too drastic. The cost of discovery would likely make maintenance of the class action impractical and no more cost efficient than individual actions. We believe defendants are entitled to depose a *reasonable* number of unnamed class members. (See *Blackie* v. *Barrack* (9th Cir. 1975) 524 F.2d 891, 907, fn. 22; see also *Spoon* v. *Superior Court* (1982) 130 Cal.App.3d 735, 748 [182 Cal.Rptr. 44, 28 A.L.R.4th 974] [defendants successfully sought depositions of only two unnamed class members].) These depositions will hopefully determine whether defendants' representations amounted to a "canned sales pitch" which is sufficiently common to warrant class treatment, as well as to explore the reliance issue and the effect of any alleged omissions. The depositions may eventually reveal that common issues of law and fact do not predominate. However, the record as it exists now is insufficient to make that determination.[5] We thus merely hold that the trial court erred in requiring unlimited discovery of the unnamed class members as a prerequisite to class certification.

B

■ We turn now to the question of whether the Association is an adequate class representative. ■ "To maintain a class action, the representative plaintiff must adequately represent and protect the interests of other members of the class. [Citation.] This requirement is a natural consequence of the equitable origins of the action and is the product in part of the relation between the res judicata effect of the class judgment on absent members and the requirements of due process." (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 463 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].)

---

but rather that it establishes a rebuttable presumption of reliance." (*Morris* v. *International Yogurt Co.* (1986) 107 Wn.2d 314, 328 [729 P.2d 33, 40-41].)

[5]The lack of sufficient discovery serves to distinguish this case from *Osborne* v. *Subaru of America, Inc.*, *supra*, 198 Cal.App.3d 646, upon which the trial court stated it relied. In *Osborne* the Court of Appeal affirmed the denial of certification to a nationwide class. Deposition testimony had demonstrated that many class members were not even exposed to the representations which allegedly were false. (*Id.* at p. 661.) By contrast, the record developed thus far in this case indicates that plaintiffs were exposed to a common set of alleged misrepresentations.

*Osborne* is also distinguishable because it presented a myriad of other problems which are not present here. The most troubling of these problems in *Osborne* was conflict of laws, because some plaintiffs might have been precluded from any recovery if they resided in states which still recognized contributory negligence. (198 Cal.App.3d at pp. 655-656.) The effect of the individual's particular use of the automobile also loomed as a substantial question not suitable for class treatment. (*Id.* at p. 659.)

 Although the trial court did not state why it felt the Association was an improper class representative, the reason offered by defendants below stemmed from the nature of the Association's membership. Approximately 5 percent of the Association's members did more than just invest in the solar equipment; they helped sell the investment program as financial planners. The Association concedes that certain of these financial planners helped form the Association in 1984. In light of the trial court's ruling, we must presume a fact essential to the judgment, which is that the financial planners formed the Association to avoid their own liability. Based only on the above facts, the adequacy of the Association's representation certainly appears suspect.

The trial court's decision, however, ignores two subsequent (and significant) events. First, financial planners have exerted no control over the Association since 1985. In January of that year the board of directors of the Association, at the recommendation of counsel, decided to exclude the planners from board membership. Since then, the board has consisted solely of Association members whose only participation in the solar program was as investors. It is well settled that class certification cannot be denied on the basis of a conflict which has been cured by the time the class seeks certification. (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at pp. 474-475, fn. 9.)

 Second, it must be remembered that all class members voluntarily joined the Association. Its counsel in this case has kept class members apprised of all significant developments, including the decision to exclude financial planners from the board of directors. In light of all these developments, over 2,000 members have chosen to continue to have the Association represent them.

We are not blind to the potential conflict between the investors and the investor/planners, but it is an insufficient ground upon which to deny class certification. In *Marshall* v. *Holiday Magic, Inc.* (9th Cir. 1977) 550 F.2d 1173, a similar problem arose; there, plaintiffs brought a class action against a cosmetic company which distributed its products through a pyramid scheme. Appellants in that case argued against class certification on the ground that the class included defendant distributors who participated in and profited from the pyramid scheme. The Ninth Circuit found this was no impediment to certification: "That some of the plaintiffs may have claims against each other does not detract from their identical legal and factual claim against the settling defendants. [Citations.] Substantial conflict going to the subject matter of the lawsuit is necessary to prevent class action treatment. [Citations.] Such conflict does not exist here." (*Id.* at p. 1177.)

Even if a conflict should later appear, we believe denial of certification was too drastic a remedy. In *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113], our Supreme Court urged trial courts to define classes in such a manner as to "permit utilization of the class action procedure." (*Id.* at p. 875, fn. 10.) For example, the trial court could have created subclasses to deal with the conflict. (See *Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 471; see also *Bogosian* v. *Gulf Oil Corp.* (3d Cir. 1977) 561 F.2d 434, 449.) In the alternative, the court had the option of excluding the financial planner plaintiffs altogether. (See, e.g., *Fanucchi* v. *Coberly-West Co.* (1957) 151 Cal.App.2d 72, 82 [311 P.2d 33] [fact that one-third of class members wished to be excluded from class was insufficient reason to bar class action suit]; see also *Payne* v. *Travenol Laboratories, Inc.* (5th Cir. 1982) 673 F.2d 798 [class limited to females when conflict with males arose and subclassing not possible]; *Blake* v. *Arnett* (9th Cir. 1981) 663 F.2d 906, 912-913 [conflict developed between plaintiff tribes, and class limited to one tribe].)

On the present record, we find no irreconcilable conflict between the planners and the investors such that the Association is an inadequate representative of the plaintiff class. The trial court thus erred in denying class certification on that basis.

### CONCLUSION

As often happens in class action suits alleging fraud, the "major players" in the fraud scheme are bankrupt or unavailable, leaving plaintiffs to sue the fringe defendants. Such is the case here, and plaintiffs may well have a difficult time prevailing on the merits against the defendants who are still parties to this suit. But the fact remains that the trial court's reasons for denying class certification cannot withstand appellate scrutiny. The trial court is therefore directed to vacate its order denying certification and to enter an order granting certification. The trial court is free to reexamine the propriety of certification if subsequent discovery warrants such a reappraisal. (See *Lazar* v. *Hertz Corp.* (1983) 143 Cal.App.3d 128, 144 [191 Cal.Rptr. 849].)

Sonenshine, J., and Wallin, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 23, 1992.