[No. G009828. Fourth Dist., Div. Three. May 12, 1993.]

SHIRLEY DANIELS et al., Plaintiffs and Appellants, v.
CENTENNIAL GROUP, INC., et al., Defendants and Respondents.

468

**COUNSEL**

Gold & Bennett, David B. Gold, John W. Allured, George S. Trevor, Alan R. Plutzik, Oswald & Yap and Michael Oswald for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Richard G. Duncan, Jr., Craig H. Millet, John R. Crews, Rogers & Wells, Bryan Cave, Thomas J. McDermott, Jr., Howard O.

Boltz, Jr., David J. Cowan, Latham & Watkins, Joseph A. Wheelock, Suzanne E. Jeffery, Marks, Murase & White, Dane L. Miller and Robert M. Phillips for Defendants and Respondents.

## OPINION

SILLS, P. J.— ██ ██ ██ Plaintiffs appeal after the trial court denied their motion for class certification.[1]

### FACTS

This case basically involves the consolidation of six real estate limited partnerships (which the parties refer to as "the Centennial Partnerships") and other private companies into a single corporate entity, defendant The Centennial Group, Inc., a Delaware corporation (which the parties call "New Centennial").[2] Plaintiffs Shirley Daniels, George Styre, David Robertson and Franklin Stooksberry (collectively the representatives) were former limited partners in the Centennial Partnerships. Suing on behalf of themselves and approximately 28,000 class members (those owning interests in the Centennial Partnerships at the time of the vote on the consolidation), the representatives alleged that former general partners of the Centennial Partnerships fraudulently induced approval of the consolidation by disseminating false and misleading solicitation materials. According to plaintiffs, defendants issued to themselves a disproportionate share of stock issued by New Centennial in connection with the consolidation.

The representatives filed four unsuccessful motions for class certification, the first three before Judge McDonald and the last before then-Commissioner Bauer. If there are problems with certifying this alleged class, they permeated all four hearings, and so little is gained by separating those hearings for purposes of this opinion. The trial court identified two problems, which will be discussed below: (1) A possible conflict of interest was created when the representatives agreed to waive individual claims for rescission but those allegations remained in the complaint and presumably

---

[1]Such an order is appealable. (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23]; *National Solar Equipment Owners' Assn.* v. *Grumman Corp.* (1991) 235 Cal.App.3d 1273, 1276 [1 Cal.Rptr.2d 325].)

[2]This particular defendant is not currently before us; it is the subject of a bankruptcy stay pursuant to 11 United States Code section 362. Use of the ever-popular phrase "a Delaware corporation" is relevant here, because another defendant in this case is The Centennial Group, Inc., a California corporation.

applied to unnamed putative class members; and (2) none of the representatives had invested in one of the six Centennial Partnerships.[3]

## DISCUSSION

■ In *Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d 462, our Supreme Court set forth some general principles regarding class action certification: "Code of Civil Procedure section 382 authorizes class action suits in California 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' The party seeking certification as a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Id.* at p. 470.) In resolving these issues, the *Richmond* court held that "[r]eviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class . . . ." (*Id.* at p. 478.)

## I

■ Class certification was denied in part because of "the apparent conflict caused by the prayer for rescission." In their operative complaint, plaintiffs sought money damages for the alleged fraud or, in the alternative, requested rescission of the entire consolidation. By the time of the fourth motion for class certification, however, it was apparent that many, if not most, putative class members could no longer seek rescission, because they (like three of the four named plaintiffs) had sold their New Centennial stock in the interim. Furthermore, as the representatives' counsel pointed out, the remedy of money damages was more likely to be favored among the class members, because New Centennial was doing well: for example, from June 1988 to March 1989, the company reported revenues of over $60 million in sales of properties. These developments led the representatives' counsel to conclude that rescission was "not likely to be feasible," and the four putative class representatives agreed to waive any rescission claims they had. Nonetheless, the trial court was concerned that the representatives had not amended their complaint to delete the rescission claim, stating, "They want

---

[3]The trial court actually identified three problems, the third being that the representatives failed to present an adequate evidentiary showing under *Hamwi* v. *Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462 [140 Cal.Rptr. 215] to justify class certification. This is actually a subissue of both of the remaining issues, however, and will be dealt with accordingly. (See fn. 5, *post.*)

to pursue it while not pursuing it, and that troubles the court as much as anything."

While we share some of the trial court's concerns on the rescission claim, denying class certification for the entire action on that basis is much like using a nuclear weapon to kill a fly. If the presence of the rescission claim creates a conflict between the class representatives and the class (and we are not sure it does), the remedy is to certify a damages class, not dismiss the whole action. The very case relied on by respondents demonstrates the point. In *Hastings-Murtagh* v. *Texas Air Corp.* (S.D. Fla. 1988) 119 F.R.D. 450, the proposed class was incomplete because it did not include certain shareholders who had voted on the transaction in question. The court therefore denied certification as to the rescission remedy, but *granted* certification of a damages class. (*Id.* at pp. 458-460.)[4]

The most we see on this record is a potential conflict, not an irreconcilable one. (See *Richmond* v. *Dart Industries, supra*, 29 Cal.3d at p. 470 [conflict must be genuine and must go to the "very subject matter" of the case].) Respondents failed to present any evidence contradicting the assessment by the representatives' counsel that the rescission claim was likely to go away on its own because damages was a more lucrative remedy. Even if a conflict does arise, the trial court can create subclasses or exclude any members seeking rescission. (See cases collected in *National Solar Equipment Owners' Assn.* v. *Grumman Corp., supra*, 235 Cal.App.3d at p. 1286.) As in *National Solar*, we find no irreconcilable conflict such that the named plaintiffs are inadequate class representatives.[5]

## II

■ The trial court also denied certification because none of the named plaintiffs owned interests in one of the six partnerships (Centennial III)

---

[4]We also note that the primary problem in *Hastings-Murtagh* is absent here, because the proposed class in the present action includes those shareholders who voted in favor of the consolidation. Thus, the proposed class is complete, because it includes all shareholders who voted on the consolidation.

[5]We believe the trial court may have "overcomplicated" matters by requiring declarations from the representatives under rule 427.4 of the Los Angeles County Superior Court's Manual for the Conduct of Pretrial Proceedings in Class Actions (the Manual). Among other things, the Manual requires a class representative to set forth factual and legal differences between his or her claim and that of other class members. It is one thing to ask a representative about his or her own claim; it is quite another to expect a representative (presumably a layperson) to know how his or her claim differs legally from other class members. Our Supreme Court said it best in its *Richmond* decision: Reviewing courts rely on the pleadings and on declarations from plaintiffs' counsel. (*Richmond* v. *Dart Industries, Inc., supra*, 29 Cal.3d at p. 478.) The declarations of the named plaintiffs, required by the trial court, proved almost useless.

which were consolidated to form New Centennial. Respondents rely on *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113], where our Supreme Court stated the well-known rule that "a plaintiff seeking to maintain a class action must be a member of the class he claims to represent." (*Id.* at p. 875.) However, as the *La Sala* court went on to explain, "The requirement that the representative be a member of the class derives from the principle that joinder of plaintiffs in a class action should consist of those sharing 'a well-defined "community of interest" in the questions of law and fact involved' . . . ." (*Ibid.*) Thus, it is the community of interest that defines the class, not whether each individual partnership has a former investor as a named plaintiff.

*In Eisenberg* v. *Gagnon* (3d Cir. 1985) 766 F.2d 770, the Third Circuit faced precisely the same issue as that presented here. The two class representatives in *Eisenberg* had invested in two of the three limited partnerships which formed the putative class. In rejecting defendants' claim that the third limited partnership was somehow unrepresented, the court focused on "typicality" rather than the number of partnerships, and stated: "Eisenberg and Nissen were not untypical because they invested in two different limited partnerships or because members of the class may have invested in either of these two, or in a third. Plaintiffs' case was that these were identical investments, prepared by the same defendants, and containing the same alleged omissions and misrepresentations." (*Id.* at p. 786.) The same is true here: The representatives allege that a single prospectus was mailed to all six partnerships, and therefore respondents' alleged misconduct is the single, pivotal, and common issue. ██ ██ There is a sufficient community of interest to define the class, and thus there is no strict requirement to have a named plaintiff with an interest in each individual partnership.[6]

## III

██ Respondents set forth a number of other arguments not adopted by the trial court to justify the denial of class certification.[7] Normally, this would be proper; in the overwhelming majority of cases on appeal, we look to the *result* reached by the trial court, not its rationale. (See, e.g., *Davey* v.

---

[6]Respondents assert that members of the five partnerships will have an incentive to undervalue Centennial III. The representatives' fiduciary obligations to all the class members would seem to undercut that theory. Even if it is viable, potentially diverse interests as to damage calculation do not preclude class certification. (See, e.g., *Blackie* v. *Barrack* (9th Cir. 1975) 524 F.2d 891, 908-911.)

[7]Perhaps the most prominent of these arguments is the representatives' alleged lack of reliance. Assuming that reliance could not be inferred (cf. *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 814-815 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]) that element would only apply to the fraud cause of action.

*Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117]; accord, *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) However, as we recently explained in *National Solar Equipment Owners' Assn.* v. *Grumman Corp., supra,* 235 Cal.App.3d 1273, "an appellate court is required to reverse an order denying class certification where the trial court engaged in incorrect legal analysis, 'even though there may be substantial evidence to support the court's order.'" (*Id.* at p. 1281, quoting *Clothesrigger, Inc.* v. *GTE Corp.* (1987) 191 Cal.App.3d 605, 612 [236 Cal.Rptr. 605].) As explained in *Clothesrigger,* "'There are several situations in which the reasons for the trial court's decision are either required by statute or, though not required, may have a significant effect on the determination of the appeal.' [Citation.] These nonstatutory situations involve issues where the appellate focus is on the *means* used by the trial court. The right result is an inadequate substitute for an incorrect process." (*Clothesrigger, supra,* 191 Cal.App.3d at pp. 611-612, italics in original.) Here, as in *National Solar, Clothesrigger,* and the Supreme Court's decision in *Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d 462, the trial court used improper criteria and made erroneous legal assumptions. Reversal is therefore required.

## CONCLUSION

The trial court is ordered to vacate its order denying certification and to enter an order granting certification. The trial court is free to reexamine the propriety of certification, including the creation of subclasses or exclusion of certain class members, if discovery warrants such a reappraisal. (See *Lazar* v. *Hertz Corp.* (1983) 143 Cal.App.3d 128, 144 [191 Cal.Rptr. 849].)

Sonenshine, J., and Crosby, J., concurred.

A petition for a rehearing was denied June 1, 1993.