Filed 3/15/13  Margolin v. Vital Pharmaceuticals CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MATTHEW MARGOLIN, | D060947 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00051561-CU-BT-NC) |
| VITAL PHARMACEUTICALS, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Matthew Margolin appeals an order denying his motion to certify a class of purchasers of a dietary supplement called "NO Shotgun" in a false advertising action against its manufacturer, Vital Pharmaceuticals, Inc. (Vital).  Margolin alleged that Vital falsely stated on product labels and its Web site that NO Shotgun contained an esterified form of creatine that was more effective than the monohydrate form at building muscle, increased muscle cell DNA, and induced formation of new muscle cells ("hyperplasia").

The trial court ruled Margolin had not presented sufficient evidence to establish several of the procedural requirements for certification of the proposed class. We affirm.

I.

BACKGROUND

A. *Margolin's Operative Complaint*

In a second amended complaint, Margolin alleged that Vital manufactures, markets and sells NO Shotgun, a creatine-based dietary supplement. According to Margolin, creatine is a performance-enhancing substance that can increase strength and power during high-intensity aerobic exercise. He alleged the target market for NO Shotgun includes body builders, weight lifters, athletes and other consumers conscious of health and fitness.

Margolin alleged Vital falsely claimed that NO Shotgun contained an esterified form of creatine (creatine ethyl ester) that was superior to the common form (creatine monohydrate) because the esterified form was better absorbed into the bloodstream and delivered intact to muscle cells, where it could be transported across the muscle cell membrane to "'cause explosive muscle growth!'" Margolin also alleged Vital falsely claimed that creatine ethyl ester, in combination with other ingredients in NO Shotgun, increased muscle cell DNA and caused muscle cell hyperplasia. According to Margolin, the scientific study that Vital cited to support its "outrageous and false claims" did not use criteria generally acceptable as reliable in the scientific community. Margolin further alleged that Vital priced NO Shotgun two to three times higher than other creatine-based

2

dietary supplements, even though scientific studies have shown the esterified form of creatine is greatly inferior to creatine monohydrate at promoting muscle growth.

In describing his own experience with NO Shotgun, Margolin alleged that he read the product label and marketing information on Vital's Web site; relied on Vital's claims about the efficacy of NO Shotgun; used the product for almost two years; but noticed no extraordinary increase in muscle mass or any effect that was not attributable to his normal workout regimen. He further alleged that in reliance on Vital's false claims concerning the superiority of creatine ethyl ester over creatine monohydrate at building muscle, he paid two or three times as much for NO Shotgun as he would have paid for other similar products containing creatine monohydrate. "In short," Margolin complained, "N.O. Shotgun is yet another 'snake oil' product based on non-existent science, and thus does not warrant a price more than the price charged for regular creatine products."

Margolin sued Vital for violations of the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.), the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.), and the false advertising law (FAL; Bus. & Prof. Code, § 17500 et seq.). He also asserted claims for "common law restitution,"[1] breach of express warranty, and breach of

---

[1]     "There is no freestanding cause of action for 'restitution' in California." (*Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 661.) Rather, restitution is a remedy that may be awarded to prevent unjust enrichment when the defendant has obtained some benefit from the plaintiff through fraud, duress, conversion or similar misconduct. (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387-388.) Restitution is authorized by the UCL and FAL. (Bus. & Prof. Code, §§ 17203, 17535; *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 177, fn. 10.) Because Margolin sought "common law restitution" on the basis of the same conduct that allegedly violated the UCL and

implied warranty. On behalf of himself and a putative class of California purchasers of NO Shotgun, Margolin sought (1) to enjoin the "ongoing deceptions" contained in Vital's product labeling and Web site marketing, and (2) "to recover for the economic harms suffered by [Margolin] and the putative class as a result of [Vital's] false and misleading advertising claims" that induced them to buy NO Shotgun.

B.      *Margolin's Motion for Class Certification*

        1.      *Initial Motion Papers*

Margolin moved to certify a class of all persons residing in California who purchased NO Shotgun at any time during the period from February 23, 2006, through the date of certification of a class in this action. Margolin argued certification of such a class was appropriate because: (1) there were at least 100 class members who were readily identifiable by their purchase of NO Shotgun; (2) common questions regarding the falsity and materiality of Vital's labeling and Web site marketing statements predominated over individual questions; (3) his claim was typical of the class because Vital deceived him and absent class members in the same manner; and (4) he would adequately represent the class because he had no conflicts with other class members regarding the litigation, and his counsel was experienced in prosecuting class actions.

In support of his motion for class certification, Margolin submitted several declarations. In his own, Margolin stated that he had purchased NO Shotgun several times from 2008 to 2010 in reliance on Vital's claims that it caused muscle cell

---

FAL, we consider his demand for restitution as part of those claims, not as a separate claim.

hyperplasia and contained an esterified form of creatine that provided better results than creatine monohydrate. Margolin also stated that, during the two years he used NO Shotgun, he noticed no extraordinary increase in muscle mass or other effects not attributable to his normal workout regimen, and would not have purchased the product had he known it would not perform as Vital had advertised. Margolin's counsel submitted a declaration in which she described her experience litigating class actions and attached several exhibits, including a label from NO Shotgun and a printout of information from Vital's Web site. Margolin also submitted declarations from two expert witnesses. One expert, a former employee of the Food and Drug Administration, declared that Vital's advertising of NO Shotgun contained "statements that classify this product as a drug." The other expert, a president of a biotechnology consulting firm who holds a doctoral degree in pharmaceutical chemistry, asserted that the claims made in NO Shotgun's labeling and marketing materials regarding muscle cell hyperplasia and the efficacy of creatine ethyl ester were "false" or "wholly fallacious."

2. *Opposition Papers*

Vital opposed Margolin's class certification motion. Vital argued Margolin had not met his burden to obtain certification because, among other reasons, (1) issues that would require individualized litigation (e.g., reliance and amount of restitution) predominated over issues that could be litigated in common (e.g., "science issues"); (2) Margolin's claim was not typical of the class; (3) the proposed class included a large number of retail purchasers who could not be identified reliably; and (4) class certification was unnecessary to obtain the requested injunctive relief.

5

As part of its opposition papers, Vital submitted a declaration from its chief executive officer, John H. Owoc. Owoc stated that in 2011, creatine ethyl ester was removed as an ingredient of NO Shotgun for cost reasons, but the product has always contained significant amounts of other forms of creatine, including creatine monohydrate. Owoc asserted that NO Shotgun is a proprietary blend of many active ingredients, any one or combination of which may motivate a consumer to buy the product.[2] According to Owoc, except for Margolin's lawsuit, Vital has never received any complaint about the effectiveness of NO Shotgun. Owoc also declared that of the many tens of thousands of units of NO Shotgun Vital has sold, it has no records to identify the ultimate retail purchasers because it sold less than 1 percent directly to retail purchasers and sold the rest at wholesale to distributors and retailers. Attached to Owoc's declaration were product labels, ingredient lists, and pricing information for NO Shotgun and comparable dietary supplements.

Vital also submitted a declaration from Joel T. Cramer, a university professor with a doctoral degree in exercise physiology. Cramer listed 24 of the active ingredients in NO Shotgun and described their physiological effects. He also declared that Vital's

---

[2]     Among the active ingredients in NO Shotgun are arginine and citrulline, amino acids that are precursors to nitric oxide (chemically, NO). Nitric oxide is a circulating compound that improves blood flow to skeletal muscle. According to the NO Shotgun label attached to the operative complaint: "NO-induced vasodilation results in killer pumps in the gym. . . . The pump is so pronounced in the muscle . . . that it is painful due to NO's opening of the veins, arteries and capillaries like floodgates. This condition brought on by NO (nitric oxide) overfills the muscle with nutrient dense blood to produce a NASTY PUMP! . . . The physiologic response to NO causes extra trauma to occur when the blood-engorged muscle is subjected to INTENSE weight training." It is from these purported effects of nitric oxide that NO Shotgun derives its name.

6

marketing statements about the efficacy of creatine ethyl ester, muscle cell hyperplasia, and increases in muscle DNA and gene proteins are truthful and supported by valid scientific studies.

### 3.    *Reply Papers*

In his reply papers, Margolin argued that individual issues concerning reliance and injury were susceptible to common proof, and the amount of damages could be calculated easily.  Margolin also argued the class was ascertainable because class members could use the class definition to identify themselves, and his claim was typical because he and the other class members had identical claims arising from the same material facts.

As part of its reply papers, Vital submitted evidentiary objections to much of the substance of the Owoc and Cramer declarations.  The record contains no rulings by the trial court, however, and Margolin makes no mention of the objections in his appellate briefing.  We therefore deem the objections abandoned.  (See, e.g., *Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316, fn. 7 [issues raised in trial court but not on appeal are forfeited]; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 ["Issues not raised in an appellant's brief are deemed waived or abandoned."].)

### 4.    *Order Denying Motion*

After hearing argument from counsel, the trial court took the matter under submission.  The court later issued the following minute order:

> "The Motion for Class Certification by Plaintiff Margolin is denied without prejudice.  The court finds insufficient evidence as to the ascertainable nature of the class, the community of interest, typicality, numerosity, and the ability of the Plaintiff to adequately represent the class.  This is based

on the total lack of evidence as to the character of the other class members. [¶] The case will otherwise proceed in due course."

Although the order states the denial is "without prejudice," it sets out the reason for the denial: insufficiency of the evidence to establish several of the procedural requirements of certification. Thus, the denial was on the merits, and the order is appealable. (*Guenter v. Lomas & Nettleton Co.* (1983) 140 Cal.App.3d 460, 465-466.)

## II.

## DISCUSSION

Margolin argues the trial court abused its discretion by denying his motion for class certification. He contends the court "applied improper legal criteria and erroneous legal assumptions in denying class certification, warranting reversal." He also contends that "[b]ecause substantial evidence does not support the [t]rial [c]ourt's denial of class certification, the [o]rder must be reversed." As we shall explain, the trial did not err by denying Margolin's class certification motion because Margolin did not demonstrate the existence of an ascertainable or a sufficiently numerous class.

A.    *Standard of Review*

We ordinarily review an order denying class certification for abuse of discretion. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022 (*Brinker*); *Morgan v. Wet Seal, Inc.* (2012) 210 Cal.App.4th 1341, 1353 (*Morgan*).) This deferential standard of review applies "only where the trial court has successfully negotiated the proper 'procedural hoops.'" (*National Solar Equipment Owners' Assn. v. Grumman Corp.* (1991) 235 Cal.App.3d 1273, 1281; see also *Occidental Land, Inc. v.*

8

*Superior Court* (1976) 18 Cal.3d 355, 361 ["the showing required for certification of a class is within the trial court's discretion provided that correct criteria are employed"].) Thus, an order denying class certification is presumed correct, and it will not be reversed on appeal if it is supported by substantial evidence (including reasonable inferences drawn from the evidence) unless it rests on improper criteria or erroneous legal assumptions. (*Brinker*, at p. 1022; *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436.) Although we must consider only the reasons stated by the trial court in its order denying class certification and not others that might support the order (*Linder*, at p. 436), we may not reverse the order "simply because *some* of the court's reasoning was faulty, so long as *any* of the stated reasons are sufficient to justify the order" (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 844; accord, *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 656 (*Caro*) ["Any valid pertinent reason stated will be sufficient to uphold the order."]). Thus, we must affirm an order denying class certification if any of the trial court's stated reasons is legally valid and substantial evidence supports the order. (*Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 939 (*Knapp*); accord, *Hamwi v. Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462, 472 (*Hamwi*) ["So long as that court applies proper criteria and its action is founded on a rational basis, its ruling must be upheld."].)

B.       *Ascertainability and Numerosity Requirements of Class Certification*

Among the reasons the trial court stated for denying Margolin's class certification motion was the lack of evidence of "the existence of an ascertainable and sufficiently

9

numerous class." (*Brinker*, *supra*, 53 Cal.4th at p. 1021.)  We address in turn these two related procedural requirements for class certification.

      1.      *Ascertainability*

We first consider whether Margolin demonstrated the existence of an ascertainable class.  No class can be certified unless there exists an identifiable group whose members are similarly situated with respect to the defendant in that they have sustained the same or a similar injury as a result of the defendant's conduct.  (*Akkerman v. Mecta Corp., Inc.* (2007) 152 Cal.App.4th 1094, 1100 (*Akkerman*); *Guidotti v. County of Yolo* (1989) 214 Cal.App.3d 1552, 1566-1567 (*Guidotti*).)  For a proposed class to be ascertainable, (1) the class definition must state precise and objective criteria that allow identification of persons who have claims and will be bound by the results of the litigation (*Marler v. E.M. Johansing, LLC* (2011) 199 Cal.App.4th 1450, 1459 (*Marler*); *Medrazo v. Honda of North Hollywood* (2008) 166 Cal.App.4th 89, 101 (*Medrazo*); *Global Minerals & Metals Corp. v. Superior Court* (2003) 113 Cal.App.4th 836, 858 (*Global Minerals*)); and (2) there must be a way to identify those persons and give them notice of the litigation without undue expense or time, usually by reference to official or business records (*Archer v. United Rentals, Inc.* (2011) 195 Cal.App.4th 807, 828 (*Archer*); *Sevidal v. Target Corp.* (2010) 189 Cal.App.4th 905, 919 (*Sevidal*)).  "Courts have recognized that 'class certification can be denied for lack of ascertainability when [(1)] the proposed definition is overbroad and [(2)] the plaintiff offers no means by which only those class members who have claims can be [separated] from those who should not be included in

10

the class.'" (*Sevidal*, at p. 921.)[3]  As we explain below, Margolin's proposed class suffers from the two ascertainability problems discussed in *Sevidal* and similar cases; and he has not shown the trial court erred by denying class certification based on these problems.

        a.     *Proposed Class Definition*

Margolin defined his proposed class as all persons residing in California who purchased NO Shotgun at any time during the period from February 23, 2006, through the date of certification of a class in this action."  The basic problem with this definition is that it does not describe a "cognizable class" of persons who are "similarly situated" to Margolin in that they "sustained the same or similar damage" as a result of Vital's alleged misconduct.  (*Guidotti*, *supra*, 214 Cal.App.3d at pp. 1566, 1567; see also *Akkerman*, *supra*, 152 Cal.App.4th at p. 1100 ["plaintiff must prove that there is an identifiable group that was harmed by the defendant"].)  Indeed, several California appellate cases have held that such "all purchaser" classes are overbroad and thus not ascertainable.

---

3      We are aware that not all California appellate courts have taken this approach when considering ascertainability.  "Some courts conclude that class ascertainability is tested by simply determining if class members may be identified from the most inclusive facial class definition.  [Citation.]  Under this method, courts are not concerned whether the definition is overbroad, and they do not consider community of interest factors in testing ascertainability.  But our Supreme Court stated, '[W]hether there is an *ascertainable class depends* in turn *upon the community of interest* among the class members in the questions of law and fact involved.'"  (*Marler*, *supra*, 199 Cal.App.4th at p. 1460.)  Like the *Marler* court, in evaluating ascertainability we take "a more nuanced approach" from which we do not exclude all consideration of community of interest factors.  (*Ibid.*)  We consider whether the definition of the proposed class is overbroad and whether the party seeking certification has shown that class members who have claims can be separated from those who do not.  (*Sevidal*, *supra*, 189 Cal.App.4th at p. 921; accord, *Marler*, at p. 1460.)

For example, in *Sevidal*, *supra*, 189 Cal.App.4th 905, we considered the ascertainability of a putative class of all California online purchasers asserting UCL, FAL, CLRA, and fraud claims against a defendant for allegedly misrepresenting the purchased items were made in the United States. We held the class was overbroad and not ascertainable because the evidence showed approximately 80 percent of purchasers was not exposed to the alleged misrepresentations and therefore had no right to recover against the defendant on the claims asserted by the named plaintiff and because there were no records from which to identify the individuals who bought goods that were misrepresented as having been made in the United States. (*Id.* at pp. 919, 921, 923.) Similarly, in *Pfizer, Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 632 (*Pfizer*), the Court of Appeal held a class of all California mouthwash purchasers during a six-month period asserting UCL and FAL claims against the manufacturer was "overbroad because it presume[d] there was a classwide injury." The court vacated the order certifying the class because many, if not most, class members were not exposed to the advertising and bought the mouthwash for other reasons and therefore were not entitled to relief. (*Id.* at pp. 631-633.) In *Akkerman*, *supra*, 152 Cal.App.4th 1094, the Court of Appeal considered a putative class of all California patients who received shock treatment after a certain date from a device manufactured by the defendant, and who alleged the defendant violated the UCL and FAL by deceptively minimizing the treatment risks in its advertising. The court held the proposed class was not ascertainable because there was no way to distinguish patients who decided to undergo shock treatment based on defendant's advertising, and thus might have a claim against the defendant, from those

12

who made their decisions based on their physician's advice or state-mandated consent forms, and thus would not have a claim. (*Id.* at pp. 1100-1101.) The court held the putative class was not ascertainable because the proposed class definition was "overbroad" and "did not adequately define those who were entitled to restitution." (*Id.* at pp. 1100, 1101.) Finally, in *Global Minerals*, *supra*, 113 Cal.App.4th 836, we considered the ascertainability of a class asserting antitrust claims based on purchases of scrap or recycled copper products during a three-year period. We vacated the order certifying the class because, "in light of the broad terminology used, the three-year period of time covered, and the technical nature of the products described and the industry structure in which the proposed class members and [d]efendants operated," the class definition was "vague and overbroad." (*Id.* at p. 860.)

Margolin's proposed class suffers from similar overbreadth problems. The only objective criteria for inclusion in the proposed class stated in the definition are California residency and purchase of NO Shotgun on or after February 23, 2006. As in *Pfizer*, this definition "presumes there was a classwide injury" from the mere purchase of the product (*Pfizer*, *supra*, 182 Cal.App.4th at p. 632); and as in *Akkerman*, it presumes no purchasers found the product "successful and beneficial" (*Akkerman*, *supra*, 152 Cal.App.4th at p. 1101). Such presumptions are not warranted, however, because Margolin submitted no evidence whatever regarding any other purchaser's experience with NO Shotgun. Nor did he present evidence that NO Shotgun was adulterated, defective, illegal, or worthless, such that a presumption of injury might arise from its mere purchase. (Cf. *Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, 156-157 [damage for CLRA claim

13

resulted from purchase of product that contained undisclosed substance that could not lawfully be sold without prescription]; *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 922 (*Hicks*) [injury for breach of warranty claim resulted from purchase of defective product].)

Rather, Margolin alleged Vital duped him and other putative class members into buying NO Shotgun at inflated prices by means of statements on its labeling and Web site falsely touting the superiority of creatine ethyl ester over creatine monohydrate at building muscle. But, as in *Pfizer*, *Sevidal*, and *Akkerman*, he did not show that all, or even most, putative class members read, relied on, or were even exposed to these statements and therefore would have claims against Vital. In fact, Vital submitted evidence in opposition to class certification that suggests many, if not most, putative class members have no such claims because they likely bought NO Shotgun for reasons wholly unrelated to the statements about which Margolin complains. For example: (1) NO Shotgun contains at least 24 active ingredients with different physiological properties, any one or combination of which might appeal to a given purchaser; (2) the labeling and Web site materials submitted by Margolin discuss the physiological effects of many of these ingredients without giving special prominence to the muscle-building effects of creatine ethyl ester — in fact, the product name and label emphasize the physiological effects of nitric oxide (NO) in building muscle; (3) creatine ethyl ester was removed as an ingredient in 2011; and (4) Vital received no complaints about the

14

effectiveness of NO Shotgun except Margolin's.[4]  Thus, as in *Global Minerals*, the "technical nature" of the product and market at issue, the lengthy period of time covered, and "the broad terminology used" make Margolin's proposed class definition "overbroad."  (*Global Minerals*, *supra*, 113 Cal.App.4th at p. 860.)

In sum, based on Vital's evidence and the allegations of the operative complaint, the trial court reasonably could conclude Margolin's proposed class of *all* California residents who bought NO Shotgun over the past several years was "grossly overbroad." (*Pfizer*, *supra*, 182 Cal.App.4th at p. 631.)  "Although class certification should not be denied on overbreadth grounds when the class definition is only slightly overinclusive [citations], in this case the overbreadth is significant."  (*Sevidal*, *supra*, 189 Cal.App.4th at p. 921.)  Thus, because the class definition did not describe "an identifiable group *that was harmed by the defendant*" (*Akkerman*, *supra*, 152 Cal.App.4th at p. 1100, italics added), or "'a set of common characteristics sufficient to allow a member of [the proposed class] to identify himself or herself *as having a right to recover based on the description*'" (*Sevidal*, at p. 920, italics added), the court reasonably could conclude, as it did, that Margolin's proposed class was not ascertainable.

---

4      Given this evidence, Margolin is simply wrong when he contends that Vital (1) "*offered no evidence* that absent class members did not purchase NO Shotgun for the same reasons [Margolin] did — as a bodybuilding supplement"; (2) "*offered no evidence* tending to establish that all, or even a significant percentage, of NO Shotgun purchasers are 'satisfied' with their results from using the product in light of the labeling representations"; and (3) "offered no evidence whatsoever in the class certification proceedings tending to suggest that the NO Shotgun labeling representations are *not* material to purchasers."

### b.    *Identification of Putative Class Members*

Another problem with the ascertainability of Margolin's proposed class is that he "'offer[ed] no means by which only those class members who have claims can be [separated] from those who should not be included in the class.'" (*Sevidal*, *supra*, 189 Cal.App.4th at p. 921.)  This is a serious problem, because without an ascertainable class, "'it is not possible to give adequate notice to class members or to determine after the litigation has concluded who is barred from relitigating.'" (*Global Minerals*, *supra*, 113 Cal.App.4th at p. 858.)  "The ascertainability requirement is a due process safeguard, ensuring that notice can be provided 'to putative class members as to whom the judgment in the action will be res judicata.'" (*Sotelo v. Medianews Group, Inc.* (2012) 207 Cal.App.4th 639, 647-648 (*Sotelo*).)  "Because of the constitutional importance of notifying absent class members—who are suddenly before the court—such notice should not be left to the whim of litigants." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 454.)

Margolin has never explained how, as a practical matter, he would identify the California residents who bought NO Shotgun during the proposed class period so that they could be given the constitutionally required notice of the action.  As we stated earlier, for a class to be ascertainable the members must be readily identifiable without undue expense or time, usually by reference to official or business records. (*Archer*, *supra*, 195 Cal.App.4th at p. 828; *Sevidal*, *supra*, 189 Cal.App.4th at p. 919.)  For the vast majority of NO Shotgun purchases, however, Vital has no records that would identify the ultimate purchaser, because it sold more than 99 percent of its units to

16

independent distributors and retailers. There is nothing in the record indicating the distributors or retailers have such records either. Thus, it appears there is no administratively feasible way that all the purchasers Margolin seeks to represent can be readily identified and given notice of the action. (Cf. *Sotelo*, *supra*, 207 Cal.App.4th at p. 649 [proposed class whose members had "no recorded relationship with respondents" was not ascertainable]; *Sevidal*, at p. 921 [members of putative class of online purchasers were not readily identifiable when defendant did not maintain or have access to records identifying purchasers].)[5]

Even if all the ultimate purchasers could be identified, Margolin would still have to identify the subset that has claims against Vital because, as we explained earlier, only purchasers who might have been induced to buy NO Shotgun at an inflated price by Vital's allegedly false statements about the effects of creatine ethyl ester on muscle cells would properly be members of Margolin's proposed class. Given (1) Vital's evidence that NO Shotgun has many active ingredients with different physiological effects, any one or combination of which might appeal to a particular purchaser; (2) the removal of creatine ethyl ester as an ingredient of NO Shotgun during the proposed class period; and (3) the

---

5    Margolin cites *Zeisel v. Diamond Foods, Inc.* (N.D.Cal., June 7, 2011, No. C 10-01192 JSW) 2011 U.S. Dist. Lexis 60608 in support of his argument that Vital's lack of records identifying the ultimate purchasers of NO Shotgun does not make the class unascertainable. That case is distinguishable, however, because unlike the class definition proposed by Margolin, the definition proposed in *Zeisel* "include[d] objective characteristics that would permit a consumer to identify themself [*sic*] as a member of the proposed class." (*Id.* at *21.) Moreover, *Zeisel* did not address the overbreadth or notice problems involved in this case. Finally, to whatever extent *Zeisel*, an unpublished federal district court decision, is inconsistent with the California appellate cases we have cited, we decline to follow it.

17

lack of any reliable and objective means to distinguish those, like Margolin, who bought NO Shotgun for its creatine-related effects from those who bought the product for wholly unrelated reasons, the trial court reasonably could conclude that there was no practical method by which "'those class members who have claims can be [separated] from those who should not be included in the class.'" (*Sevidal*, *supra*, 189 Cal.App.4th at p. 921.)[6] In other words, the court reasonably could conclude Margolin's proposed class was not ascertainable because putative class members could not "'be identified *without unreasonable expense or time and given notice of the litigation*.'" (*Id.* at p. 919, italics added.)

### c.     *Margolin's Arguments for Reversal*

Margolin argues the trial court's ruling that his proposed class is not ascertainable is not supported by substantial evidence and rests on improper criteria and erroneous legal assumptions. We shall address his various arguments in turn.

Margolin contends substantial evidence does not support the trial court's ruling because his class definition allows NO Shotgun purchasers to identify themselves as class members, and he is not required to identify individual class members. A named plaintiff need not identify the unnamed members of the putative class at the pleading or class

---

6      Thus, Margolin is wrong when he contends the court erred by denying certification because Vital "*offered no evidence* in the class certification proceedings suggesting that it might be difficult for absent class members to identify themselves as purchasers of NO Shotgun." Margolin, not Vital, had the burden to establish the existence of an ascertainable class; Vital did offer evidence pertinent to this issue; and Margolin incorrectly assumes the purchase of NO Shotgun is sufficient by itself to give rise to a claim against Vital.

18

certification stage to demonstrate the existence of an ascertainable class (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 706 (*Daar*); *Medrazo*, *supra*, 166 Cal.App.4th at p. 101), and a proposed class definition sufficient to allow persons to identify themselves as class members may satisfy the ascertainability requirement (see, e.g., *Marler*, *supra*, 199 Cal.App.4th at pp. 1460-1461; *Medrazo*, at p. 101). But, Margolin's proposed class definition does not allow such self-identification. As we have explained, the definition is overbroad because it does not distinguish NO Shotgun purchasers who have claims against Vital (i.e., those who were dissatisfied and might have been induced to buy NO Shotgun by the labeling and marketing statements Margolin alleges to be false) from those who do not have claims (e.g., those who were not exposed to the allegedly false statements, bought NO Shotgun for unrelated reasons, or were satisfied with the product). Without objective characteristics, common transactional facts, or some other means of making this distinction, and thereby allowing identification and notification of putative class members, Margolin's proposed class definition does not describe an ascertainable class. (*Sotelo*, *supra*, 207 Cal.App.4th at pp. 648-650; *Sevidal*, *supra*, 189 Cal.App.4th at pp. 920-921.)

The cases Margolin relies on to support his argument that his proposed class is ascertainable are not on point because in those cases any overbreadth of the class definition was insignificant and the putative class members could be identified readily based on common documented transactions with the defendants that gave rise to the claims sought to be litigated on a classwide basis. For example, in *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 810-811 (*Vasquez*), the putative class members each signed

19

an installment contract for the purchase of meat and a freezer; they were subjected to a uniform script of misrepresentations by defendants; and their names and addresses could be ascertained from the defendants' books. In *Daar*, the defendant allegedly "fixed" its taxi meters to overcharge a proposed class of all taxi service coupon book purchasers whose names and addresses could be ascertained from the defendant's books and records. (*Daar*, *supra*, 67 Cal.2d at pp. 700-701.) In *Marler*, a putative class of mobilehome park residents who were induced to convert the park into a condominium development by the park owner's allegedly false promises could easily be identified from the park owner's business records and from other documents. (*Marler*, *supra*, 199 Cal.App.4th at pp. 1455, 1460-1461.) In *Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524, 1532, the proposed class of drivers allegedly undercompensated for on-call time had already been identified by the defendant through computerized employment records and included "virtually all" drivers. In *Medrazo*, the potential class members who bought motorcycles without legally required price labels could be identified from the defendant's sales records and given notice because the "vast majority" of motorcycles the defendant sold did not have the required labels; and after notice was given to all purchasers, those with claims could use the proposed class definition to identify themselves. (*Medrazo*, *supra*, 166 Cal.App.4th at p. 101.) Finally, in *Hicks*, *supra*, 89 Cal.App.4th 908, the members of a class of homeowners in specified developments constructed and marketed by the defendant in which all the concrete foundation slabs were allegedly defective could be determined from public records and the defendant's business records. (*Id.* at pp. 912, 916.)

Here, by contrast, the *only* transaction the putative class members have in common is the purchase of NO Shotgun, which, we have explained, does not by itself give rise to the various claims Margolin seeks to assert against Vital on their behalf. As we also explained, Margolin's proposed class definition is "grossly overbroad." (*Pfizer*, *supra*, 182 Cal.App.4th at p. 631.) Finally — and importantly — where, as here, "the proposed class contains an unknown number of members who have no recorded relationship with [Vital], a serious notice issue results. The theoretical ability to self-identify as a member of the class is useless if one never receives notice of the action." (*Sotelo*, *supra*, 207 Cal.App.4th at p. 649.) Accordingly, because the class proposed by Margolin "present[ed] serious issues for provision of notice, the interest that the ascertainability requirement is designed to meet," we "discern no abuse of discretion in the trial court's finding that the proposed class is not ascertainable." (*Id.* at p. 650.)

Next, Margolin argues the order denying class certification must be reversed because in ruling the proposed class was not ascertainable the trial court applied "improper criteria" and "erroneous legal assumptions." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 (*Richmond*); accord, *Brinker*, *supra*, 53 Cal.4th at p. 1022.) Specifically, he contends the court erred by "failing to focus on the class definition to determine ascertainability, and requiring extrinsic evidence regarding individual absent class members." Margolin's various arguments regarding extrinsic evidence about absent class members arise from the court's statement that certification was not warranted "based on the total lack of evidence *as to the character of the other class members*." (Italics added.) According to Margolin, this statement indicates the

21

court erroneously assumed he had to produce declarations from absent class members or other extrinsic evidence concerning their "character." At different points in his briefing, he interprets "character" to mean absent class members' "'emotional, intellectual, and moral qualities'"; their "state of mind" or "subjective beliefs"; and their reliance on and injury caused by Vital's allegedly false advertising. Independently reviewing Margolin's arguments that improper criteria were used and erroneous legal assumptions were made (see, e.g., *Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1297), we conclude, for reasons explained below, that they lack merit.

Margolin cites nothing to support his assertion the trial court failed to focus on the class definition he proposed. In denying class certification, the court was not required to provide a statement of facts and conclusions of law, or otherwise set out its reasoning in detail. (*Knapp*, *supra*, 195 Cal.App.4th at p. 939; *Osborne v. Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 652, fn. 1.) In the absence of a contrary indication in the record, we presume the trial court properly followed the applicable law. (Evid. Code, § 664; *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913.) As we explained in part II.B.1.a.-b., *ante*, under the law governing ascertainability, the proposed class definition is a key factor courts consider, and the definition does not satisfy the ascertainability requirement where, as here, it contains no precise or objective criteria that can be used to identify the persons who have claims against the defendant, will be bound by the results of the litigation, and must be given notice. Since nothing in the record indicates the trial court did not apply these legal principles when it determined Margolin's proposed class was not ascertainable, we must presume it did so.

22

There is also nothing in the record to support Margolin's contention the trial court improperly placed on him a burden to produce evidence of absent class members' "character." What the trial court meant by this reference to "character" is not entirely clear from the sentence of the order in which it appears. We therefore must adopt a reasonable interpretation (Civ. Code, § 3542) by considering the entire order (*Lazar v. Superior Court* (1940) 16 Cal.2d 617, 622) and the evidence and arguments presented in connection with the class certification motion (*Knapp*, *supra*, 195 Cal.App.4th at p. 939). Further, if possible we must adopt an interpretation that upholds the order rather than invalidates it. (Civ. Code, § 3541; *Minehan v. Silveria* (1933) 131 Cal.App. 317, 319.) As we shall explain, when these rules of interpretation are applied, it becomes clear that by referring to the lack of evidence of the "character" of absent class members, the trial court meant the lack of evidence about their experiences with NO Shotgun, not, as Margolin suggests, evidence about their emotional, intellectual, or moral qualities.

In connection with the motion for class certification, neither the trial court nor the parties ever mentioned anything about the emotional, moral, intellectual, or other personal traits of absent class members, which, of course, are entirely irrelevant to class certification. Rather, in his motion for class certification, Margolin argued, among other things, that certification was appropriate because putative class members could identify themselves as purchasers of NO Shotgun, and the members were similarly situated because Vital induced them to buy the product at inflated prices by means of the same misrepresentations regarding the superiority of creatine ethyl ester over creatine monohydrate at building muscle. In support of the motion, Margolin submitted a

23

declaration in which he described his own reasons for buying NO Shotgun and his own disappointing experience with the product, but he submitted no evidence regarding anyone else's purchase of or experience with the product. In opposition to Margolin's class certification motion, Vital argued, among other things, that class certification was not warranted because there was no reliable way to identify the putative class members, and because the members were not similarly situated in that issues concerning the reasons why they bought NO Shotgun, what they paid for it, and what their results of using it were, varied and would require individualized proof. Vital submitted evidence that it had no records regarding more than 99 percent of retail purchasers; that NO Shotgun has many active ingredients with various physiological effects, any one or combination of which might appeal to a particular consumer; that creatine ethyl ester was removed as an ingredient during the proposed class period; and that Margolin's lawsuit was the only complaint it had ever received about the effectiveness of NO Shotgun. Based on this record, the trial court found "insufficient evidence as to the ascertainable nature of the class, the community of interest, typicality, numerosity, and the ability of [Margolin] to adequately represent the class. *This is based on the total lack of evidence as to the character of the other class members.*" (Italics added.)

When the italicized sentence quoted above is construed reasonably and in the context of the whole order and the record before the trial court on the class certification motion, it is obvious the court was not referring to the "'combination of emotional, intellectual, and moral qualities'" of absent class members, as Margolin implausibly suggests. Rather, the court was referring to the absence of evidence to establish the

24

existence of an objectively identifiable group of purchasers of NO Shotgun situated similarly to Margolin in terms of the reasons they bought the product and their experiences using it.[7] The court was therefore using "character" to denote a "combination of qualities or features that distinguishes . . . [the] group . . . from another." (American Heritage Dict. (2d college ed. 1982) p. 259, col. 2.) Indeed, a class is ascertainable only when its members have such a "character," i.e., when they constitute an identifiable group of "similarly situated persons" who "have sustained the same or similar damage" (*Guidotti*, *supra*, 214 Cal.App.3d at pp. 1566, 1567) and can be described by "'a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description'" (*Sevidal*, *supra*, 189 Cal.App.4th at p. 920).

To determine whether Margolin's proposed class had the type of "character" required for an ascertainable class, the trial court properly considered such "subjective beliefs" as how reliance, causation, and injury would be proven as to absent class members. "[F]or an ascertainable class, the right of each individual to recover may not be based on a separate set of facts applicable only to him." (*Vasquez*, *supra*, 4 Cal.3d at

---

[7] We thus agree with Vital that "in the context of the substantial briefing and oral argument, the 'character of the other class members' does not refer to their moral qualities as [Margolin] disingenuously asserts . . . . Rather, as presented to the trial court . . . , there is insufficient evidence regarding the character of the class because (1) the class members cannot be identified objectively, and (2) it is unknown (a) why each consumer purchased NO Shotgun . . . , (b) whether the reasonable expectations of each were satisfied, and (c) what each might otherwise have paid for another similar product in order to prove entitlement to monetary recovery . . . ." We also reject Margolin's argument that by interpreting the trial court's order in this way and defending it on appeal, Vital asks us "to review an order that does not exist."

p. 809.)  Hence, a court ruling on class certification must "consider whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment."  (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327 (*Sav-On*).)  Here, Margolin's theory of recovery, asserted in claims for breach of warranty and violations of the UCL, FAL, and CLRA, was essentially that Vital induced him and the other putative class members to buy NO Shotgun at inflated prices by means of false advertising statements regarding the effects of creatine ethyl ester on muscle cells.  CLRA and warranty claims based on false advertising require proof of reliance, causation, and injury.  (*Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 221-222 (*Tucker*) [CLRA]; *Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 142 [warranty].)  Although the UCL and FAL require such proof from class representatives but not absent class members (*Sevidal*, *supra*, 189 Cal.App.4th at pp. 923-924), "both laws require, at a minimum, that the class be exposed to the allegedly false advertising at issue" (*Davis-Miller v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 106, 124-125 (*Davis-Miller*)).  Hence, information about the reasons why absent class members bought NO Shotgun, the labeling or marketing statements they read or relied on, and their satisfaction or dissatisfaction with the product — what Margolin calls absent class members' "state of mind" and "subjective beliefs" — was relevant to the related determinations of whether the claims alleged were

"likely to prove amenable to class treatment" (*Sav-On*, at p. 327) and, ultimately, whether the class was "ascertainable" (*Vasquez*, at p. 809).[8]

Margolin nevertheless insists he did not have to provide any information about other class members' experiences with NO Shotgun because "this is a deceptive labeling case ideally suited for class certification." He argues "subjective issues" of materiality, reliance, causation, and injury as they pertain to absent class members are, as a matter of law, "completely irrelevant to the class certification analysis." According to Margolin, such issues may be presumed as to all other California residents who bought NO Shotgun during the proposed class period because Vital made identical labeling misrepresentations to them. We disagree.

An essential factual premise underlying Margolin's argument for a classwide presumption of reliance, causation, and injury is missing because there is no evidence Vital made the same alleged misrepresentations to all putative class members. Margolin submitted no evidence regarding any other purchaser's experience buying or using NO Shotgun, and the record contains no information about what product labeling or Web site marketing statements any other purchaser actually read or relied on. Further, the alleged misrepresentations underlying Margolin's claims relate specifically to the muscle-

---

8    Although Margolin is correct that he did not have to provide such information in the form of declarations from other putative class members (*Sav-On*, *supra*, 34 Cal.4th at p. 334), he did have to provide the information in some form, because it was his burden to show the claims were suitable for class treatment (*id.* at p. 326).

building effects of creatine ethyl ester,[9] but that ingredient was removed from NO Shotgun during the proposed class period and is no longer listed in Vital's labeling or marketing materials. No presumption of reliance, causation, or injury can be made as to putative class members who bought NO Shotgun after these changes were made. (See *Davis-Miller*, *supra*, 201 Cal.App.4th at p. 125 [no inference of classwide reliance without evidence alleged misrepresentations were uniformly made to all members of proposed class]; *Fairbanks v. Farmers New World Life Ins. Co.* (2011) 197 Cal.App.4th 544, 562 (*Fairbanks*) [class certification denial will be upheld when determination whether alleged misrepresentations were actually made to each putative class member requires individual proof]; *Pfizer*, *supra*, 182 Cal.App.4th at p. 632 [no presumption

---

[9] In his reply brief, Margolin contends that although Vital "*repeatedly* trumpets this false assertion through its [briefing] as the primary basis for its fanciful theory of the case, *nowhere in the* [*operative complaint*] *does* [*he*] *allege or 'admit' that he purchased NO Shotgun for its creatine content.*" The record belies this contention.

In the first paragraph of the operative complaint, Margolin called NO Shotgun a "creatine-based product." He went on to allege he paid an inflated price for NO Shotgun based on Vital's false statements that creatine ethyl ester is more effective than creatine monohydrate at building muscle. (See pt. I.A., *ante*.) Consistent with these allegations, Margolin submitted a declaration in support of his class certification motion in which he stated that (1) he read Vital's "claim that creatine ethyl ester is, in large part, responsible for the promised NO [S]hotgun results"; and (2) "[a]s a result, [he] was willing to pay more for NO [S]hotgun than he usually paid for similar body building supplements."

Thus, Margolin both alleged (in the operative complaint) and admitted (in his declaration) that he bought NO Shotgun because it contained creatine ethyl ester, which he believed (based on Vital's allegedly false advertising) would increase his muscle mass substantially more than a similar product that contained creatine monohydrate. Having sought class certification on that theory, Margolin may not disclaim it on appeal. (See, e.g., *Ernst v. Searle* (1933) 218 Cal. 233, 240 ["The rule is well settled that the theory upon which a case is tried must be adhered to on appeal."]; *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 ["a litigant may not change his or her position on appeal and assert a new theory"].)

28

absent class members were injured and entitled to restitution under UCL or FAL when they were never exposed to allegedly deceptive advertising].)[10]

An essential legal premise underlying Margolin's argument for a classwide presumption of reliance, causation, and injury is also missing because he presented no evidence that the labeling statements upon which he allegedly relied were material to all other purchasers of NO Shotgun. A presumption, or at least an inference, of detrimental reliance on a misrepresentation arises when there is a showing the misrepresentation was "material," i.e., a reasonable person would consider its existence or nonexistence important in determining his course of conduct in the transaction in question. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 327 (*Tobacco II*).) Although materiality is generally a question of fact requiring individualized proof (*ibid.*), the Legislature may determine that certain types of representations are material (see, e.g., *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 329 (*Kwikset*) ["The Legislature has recognized the materiality of [a 'Made in U.S.A.' label] by specifically outlawing deceptive and fraudulent 'Made in America' representations."]). Or, more commonly, a misrepresentation may be deemed material when the record shows that but for the misrepresentation, the putative class members would not have acted to their detriment

---

10    Margolin thus misplaces reliance on *Richmond*, *supra*, 29 Cal.3d 462, *Vasquez*, *supra*, 4 Cal.3d 800, and similar cases holding claims based on common written misrepresentations are suitable for class treatment. Such claims may be resolved on a classwide basis "*when the same material misrepresentations have actually been communicated to each member of a class*." (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1095.)

(*Tucker*, *supra*, 208 Cal.App.4th at p. 222; *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1294 (*Massachusetts Mutual*)).

Unlike the cases on which Margolin relies, no presumption of materiality, reliance, causation, or injury is warranted here. Margolin has not shown, for example, that Vital made a false labeling statement regarding a matter legislatively determined to be material (*Kwikset*, *supra*, 51 Cal.4th at p. 333); conducted "a decades-long campaign of deceptive advertising" regarding the serious health risks of its product (*Tobacco II*, *supra*, 46 Cal.4th at p. 306); failed to disclose its product contained an ingredient making purchase without a prescription illegal (*Steroid Hormone Product Cases*, *supra*, 181 Cal.App.4th at p. 157); or failed to disclose the product contained a known defect that substantially diminished its represented usefulness (*McAdams v. Monier, Inc.* (2010) 182 Cal.App.4th 174, 186). Rather, Margolin contends Vital deceived him and all other putative class members into buying NO Shotgun by falsely stating creatine ethyl ester is more effective than creatine monohydrate at building muscle. Such assertions were not material to putative class members who bought NO Shotgun after creatine ethyl ester was removed as an ingredient and associated label and Web site references were deleted, because they were never exposed to the assertions. (See *id.* at pp. 179, 184 [presumption of materiality requires exposure to alleged misrepresentation].) Nor were Vital's statements about creatine ethyl ester material to putative class members who bought NO Shotgun because they desired one or more of the many other ingredients or physiological effects to which the statements were irrelevant. (Cf. *Fairbanks*, *supra*, 197 Cal.App.4th at p. 565 [no presumption of materiality when insurance policy had several features that might have

30

induced purchase and to which alleged misrepresentations were irrelevant]; *In re Vioxx Class Cases* (2009) 180 Cal.App.4th 116, 133-134 [same when drug was prescribed based on patient-specific factors to which alleged misrepresentations were irrelevant].)  Further, the statements were not material to putative class members "who never saw [NO Shotgun] advertisements or representations of any kind before deciding to purchase" the product, such as those who purchased it "primarily based on word of mouth or because they saw [it] in a store or at a friend's or family member's home."  (*Cohen v. DIRECTV, Inc.* (2009) 178 Cal.App.4th 966, 979.)  Where, as here, "the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action."  (*In re Vioxx Class Cases*, at p. 129.)

In sum, Margolin has not shown the trial court's ascertainability ruling is unsupported by substantial evidence, or rests on improper criteria or erroneous legal assumptions.  We thus must uphold that ruling.  (*Brinker*, *supra*, 53 Cal.4th at p. 1022.)

2.    *Numerosity*

We next consider whether Margolin demonstrated the existence of a sufficiently numerous class to warrant certification.  The numerosity element requires the action involve a question that is of common interest to "many persons," or the parties be so "numerous" that "it is impracticable to bring them all before the court."  (Code Civ. Proc., § 382; see *Jellen v. O'Brien* (1928) 89 Cal.App. 505, 509.)  "[T]here is no set number required as a matter of law for the maintenance of a class action."  (*Hebbard v. Colgrove* (1972) 28 Cal.App.3d 1017, 1030.)  Classes of 10, 28 and 42 members have been held

31

quantitatively sufficient (see *Rose v. City of Hayward* (1981) 126 Cal.App.3d 926, 934), but a class of six members has been held too small (*Kennedy v. Domerque* (1955) 137 Cal.App.2d Supp. 849, 850). It is the burden of the party seeking to certify a class to prove the "approximate size of her class." (*Bauman v. Islay Investments* (1975) 45 Cal.App.3d 797, 801 (*Bauman*).) Margolin did not satisfy this burden.

In his class certification motion, Margolin argued the trial court had to accept the allegation of his second amended complaint that the class contained at least 100 members and therefore satisfied the numerosity requirement. He also contended numerosity could be inferred from information on Vital's Web site about the nature of its retail merchandising business. In his appellate briefing, Margolin similarly argues numerosity may be inferred from information in the record about the nature and scope of Vital's business, as well as from the jurisdictional allegations of his second amended complaint that Vital transacts "significant business in California" and "a high percentage" of its customers resides in California. Margolin also contends Vital conceded numerosity at the hearing on the class certification motion by admitting the class contained tens of thousands of people. None of these arguments has merit.

Margolin cannot rely on the allegations of his second amended complaint to satisfy his burden to establish numerosity. Although a trial court must accept class action allegations as true when a defendant demurs to them (*Daar*, *supra*, 67 Cal.2d at p. 714), when a plaintiff moves to certify a class, he has the "burden to establish that *in fact* the requisites for continuation of the litigation in that format are present" (*Hamwi*, *supra*, 72 Cal.App.3d at p. 471, italics added). A plaintiff seeking class certification must present

substantial evidence establishing each of the procedural requirements of certification. (*Morgan*, *supra*, 210 Cal.App.4th at p. 1354; *Quacchia v. DaimlerChrysler Corp.* (2004) 122 Cal.App.4th 1442, 1447 (*Quacchia*).) "But pleadings are allegations, not evidence, and do not suffice to satisfy a party's evidentiary burden." (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 154 (*Soderstedt*).) Thus, Margolin cannot sustain his burden to demonstrate numerosity simply by pointing to his pleadings.

Margolin also may not rely on inferences he draws from information about the nature and scope of Vital's business to establish the existence of a class sufficiently numerous to warrant certification. In support of his argument that he adequately established numerosity, Margolin cites a page printed from Vital's Web site that identifies 10 members of its "Specialty Sales Team" and an interrogatory response by Vital that NO Shotgun is sold by eight different retail entities in California. Although it may be reasonable to infer from this limited information that numerous California residents purchased NO Shotgun during the proposed class period, the information does not support an inference that those purchasers have claims against Vital. As we have explained, Margolin submitted no evidence that any other purchasers were situated similarly to him in that they were duped into buying NO Shotgun at an inflated price by Vital's allegedly false statements concerning the efficacy of creatine ethyl ester at building muscle, and therefore might have the claims Margolin wants to assert on their behalf.

The record actually supports the opposite conclusion, i.e., that the putative class members Margolin seeks to represent do not have claims against Vital. As we discussed

33

earlier, the product labels and Web site marketing materials concerning NO Shotgun and the declarations Vital introduced describing the product's many ingredients and their physiological effects support an inference that most putative class members bought NO Shotgun for reasons unrelated to the efficacy of creatine ethyl ester at building muscle. The fact that Vital received no complaints about NO Shotgun from anyone but Margolin supports an inference that purchasers were satisfied with the product and have no claims against Vital. Since these inferences are reasonable and support the trial court's ruling on numerosity, we may not disregard them in favor of the contrary inferences Margolin urges us to draw. (See *Massachusetts Mutual*, *supra*, 97 Cal.App.4th at p. 1287 [when certification order turns on inferences to be drawn from facts, reviewing court may not substitute its inferences for those of trial court].)

Next, Margolin asserts Vital did not dispute numerosity and actually conceded the issue at the hearing on the motion for class certification. In support of this assertion, he cites a portion of the argument of Vital's counsel responding to his own counsel's assertion that members of the proposed class are entitled to a refund of the full purchase price of NO Shotgun. After arguing that Margolin had not been injured, Vital's counsel continued: "Even though [Margolin is] not entitled to a penny, put a blanket recovery on everybody else to disgorge the entirety of whatever was paid for the product for *tens of thousands of people*. It's not within the realm of plausibility that that can be a proper remedy." (Italics added.) This was simply an argument that a full refund of the purchase price to tens of thousands of purchasers who had not been injured was not an appropriate remedy. It was not a concession that there exists a class of purchasers numbering in the

34

tens of thousands with claims against Vital of the type Margolin seeks to assert on their behalf.

Even if Vital had conceded there were tens of thousands of members in the proposed class, that concession would not suffice. "[T]he defendant's agreement not to contest numerosity 'is not enough to establish the numerosity requirement. There must be some evidence supporting such.'" (*Soderstedt*, *supra*, 197 Cal.App.4th at p. 155; see also *Quacchia*, *supra*, 122 Cal.App.4th at p. 1447 [party seeking class certification must present substantial evidence of all procedural requirements of certification]; *Bauman*, *supra*, 45 Cal.App.3d at p. 801 [party seeking class certification must prove approximate size of proposed class].) Here, no such evidence was submitted.

In sum, "[o]ther than [his] own claim [Margolin] made no showing of the existence of any actual controversy with [Vital], nor did [he] offer proof that anyone except [him]self and [his] counsel desired to prosecute the lawsuit or stood to profit from it." (*Bauman*, *supra*, 45 Cal.App.3d at p. 801.) But, of course, "a class of one is not a class." (*Department of Fish & Game v. Superior Court* (2011) 197 Cal.App.4th 1323, 1363.) The trial court therefore did not abuse its discretion in ruling that Margolin failed to meet his burden to demonstrate the numerosity required for class certification.

C.    *Other Class Action Requirements*

The parties also disagree over whether Margolin satisfied his burden to demonstrate the community of interest requirements of class certification: predominance of common questions of law or fact, typicality, and adequacy of representation. We need not, and do not, resolve this dispute. "We will affirm an order denying class certification

35

if any of the trial court's stated reasons was valid and sufficient to justify the order, and it is supported by substantial evidence." (*Knapp*, *supra*, 195 Cal.App.4th at p. 939; see also *Caro*, *supra*, 18 Cal.App.4th at p. 656 ["Any valid pertinent reason stated will be sufficient to uphold the order."].)  Our conclusion the trial court did not abuse its discretion by denying Margolin's class certification motion for his failure to "demonstrate the existence of an ascertainable and sufficiently numerous class" (*Brinker*, *supra*, 53 Cal.4th at p. 1021) is therefore sufficient to uphold the order.

DISPOSITION

The order denying class certification is affirmed.


_____

IRION, J.

WE CONCUR:


_____

McCONNELL, P. J.


_____

O'ROURKE, J.